## Howard v. Cornett, et al.

(Decided December 10, 1912.)

### Appeal from Harlan Circuit Court.

1. Deeds—Erroneous Description—Effect of—Intention of Vendor and Vendee.—Although the specific calls in a deed do not embrace a certain tract of land, if it appears from the whole deed, the surrounding facts and circumstances that it was the intention of the vendor to sell and of the vendee to buy the certain tract of land, the title thereto will be held to have vested in the vendee.

W. F. HALL for appellant.

J. G. & J. S. FORRESTER and CHAS. G. MUTZENBURG for appellees.

Opinion of the Court by Judge Nunn—Reversing.

Thirty or forty years ago Robert Napier owned about 400 acres of land on what is known as "Bob's Creek," in Harlan County, Kentucky. It laid in one irregular body and was covered by several patents; three in his name, two in the name of William Farmer, one in the name of James Farmer and one in the name of Jonathan Kelly. This 400 acre survey also conflicted with a 1,000 acre patent in the name of Lewis Farmer and another 1,000 acre patent issued to John Ledford and Robert Napier. These two 1,000 acre patents also conflicted with each other and this court settled the rights of the owners of these two patents in the case of Hall v. Blanton, 25 Ky. L. R., 1400. Robert Napier enclosed and cultivated a considerable portion of his 400 acre patent, and it was about 20 acres of this enclosed and cultivated land that the lower court gave Blanton in the judgment appealed from. This enclosed land was near the dwelling house of Napier and contained an orchard and graveyard. Appellee, W. S. Blanton married a daughter of Robert Napier and after the death of Napier, he purchased all the interests of the other children in the land referred to, resided upon and cultivated the land for many years and sold it April 30, 1901, to W. S. Hensley for $4,000, moved away and gave Hensley possession of the whole farm. The deed to Hensley attempted to give the boundary of the land, but it appears from the plat of the survey on file in the record and the evidence, that the calls in the deed did not fit the actual boundary of the land in several particulars. Evidently, Blanton had lived upon the farm for such a long time, he thought he could and attempted to give the exact location of the whole outside boundary of the farm from memory and failed in several particulars. The deed, after attempting to give the outside boundaries as stated, concluded with these words:

"Same boundary being known as the R. Napier farm, except one-fourth acre, it being a graveyard with the right of way to go to and from same."

It is certain that Blanton sold, attempted to and did convey the R. Napier farm, and that the 20 acres of improved land recovered by Blanton in the judgment below, was a part of the R. Napier farm. Hensley sold and conveyed this farm to Charles Hall who sold it to N. H. Howard, appellant herein. In both of the deeds last mentioned, the 20 acres was included; the error made in the deed from Blanton to Hensley was not made in these deeds. Since 1901, the date of the deed from Blanton to Hensley, the R. Napier farm, including the land in contest has been in the possession of and cultivated by the purchasers; and Blanton has exercised no control, whatever, over it, except several years after he sold it and after appellant, Howard, had purchased it, he gave Howard notice not to trespass upon this disputed piece. It is evident to our minds that some time after Blanton conveyed the land he discovered that the calls in the deed made by him to Hensley did not include the land in dispute, and from that time he began, orally, to make some claim to it, and in 1905 he executed a mortgage upon it to A. B. Cornett and J. F. Skidmore to secure the payment of $600. He says he received from Cornett and Skidmore as much as $20 in cash; that they paid some fines for him and, to use his language:

"A part of the consideration for this mortgage debt was that they were to take the property and keep thieves and rogues from stealing it."

This action was instituted by Cornett and Skidmore to enforce their mortgage lien and Howard answered claiming the land. There is consolidated with this action, one brought by Blanton against N. H. Howard and one Asher in which he sued them for damages for trespass upon the land and cutting timber and for opening roads through the land in dispute. The actions were tried together and the lower court enjoined appellant and Asher from trespassing upon the land and adjudged Blanton to be the owner of the small piece of land referred to and enforced appellees' lien. Much testimony was introduced showing that the land in dis-

pute, or nearly all of it, was included in the patent boundary of Lewis Farmer for 1,000 acres and also in his patent for 400 acres, and there was also much evidence introduced showing the contrary. However, from the view we take of the case, after careful examination of the record, it is unnecessary to pass upon this question. We are of the opinion that Blanton intended to sell and that Hensley thought he bought the whole of the R. Napier farm. It is not reasonable to suppose that Hensley thought when he accepted the deed from Blanton, that he was not to get the orchard and this fifteen or twenty acres of cleared land near his house which had been used and cultivated by Napier in his lifetime and by Blanton up to the time he made the deed to Hensley. There is also a statement in the deed which is inconsistent with the idea that Blanton retained the property in controversy; that is the words above copied whereby Blanton reserved the graveyard and a right of way to and from it. Blanton could not and did not attempt to explain why he made this reservation if he did not sell the land immediately surrounding the graveyard which is the land in dispute. The provision is absolutely senseless if he reserved that part of the R. Napier farm which he now claims he did reserve for it included the graveyard. We are not unaware of the rule that a particular description in a deed usually governs the general description. But there is another rule which prevails in this case, which is as follows: To ascertain the intention of a vendor, the language of the whole deed must be considered as well as the surrounding facts and circumstances. So when, in accordance with this rule, we take the plat of the survey of the Napier farm which is on file and compare it with the calls in the deed which attempted to give the outside boundary of the land and discover the discrepancies in the deed and consider that fact together with the fact that Blanton stated in his deed that he was selling Hensley what was known as the "R. Napier farm," and with the fact that if he did not sell the land in dispute the reservation of the graveyard and right of way to and from it, was meaningless, we are convinced that Blanton sold the whole farm to Hensley and that by oversight, the land in dispute was not included in the specific calls in the deed which attempted to give the outside boundary.

For these reasons, each of the judgments in the consolidated action against Howard is reversed and remanded with directions to the lower court to dismiss the petition in each case.