## McKinney, et al. v. Raydure.

(Decided June 18, 1918.)

### Appeal from Estill Circuit Court.

1. **Deeds—Description.**—In a description of land in deeds and other contracts, where there is both a particular and a general description inconsistent with each other, the general rule is that the

general description will give way to the particular one, and this applies to judicial deeds as well as contracts inter partes; but this rule surrenders to the more important and universal one that the intention of the parties shall prevail, and in arriving at that intention all parts of the instrument or other papers and documents to which it refers may be consulted and in addition the court may be placed by parol evidence in the circumstances and condition of the parties at the time of the execution in order to ascertain what was meant and intended thereby.

2.  Judgment—Title to Particular Tract of Land—Description—Intention.—Where M. owned a large tract of land, known as the Cottage Furnace tract, particularly described, known and understood, but from which certain exclusions because of prior patents and sales were to be made, and the heirs of M. after his death brought suit to sell all of his land in the known and named tract, a judgment attempting to specifically describe what lands M. owned in that tract with the addition that it was to include all the lands which he did own in the named tract, will include any lands which he so owned, although lying outside of the specific description, if they are within the particular description of the larger well known tract, and the purchaser at the sale will obtain title to such outlying land, since the record in the case to which the court may look, as well as the conduct of the parties since the sale, is thoroughly convincing that the parties intended to sell all of the land which their ancestor owned in the named tract.

PENDLETON & BUSH, GEORGE W. GOURLEY, J. P. HOBSON & SON and CLARENCE MILLER for appellants, Joel McKinney heirs.

KELLY KASH for appellants, Thomas McKinney heirs.

EDWARD C. O'REAR, F. A. BALDWIN and HUGH RIDDELL for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The question involved on this appeal is the title to a tract of land containing 172 acres, lying in Estill county, Kentucky. It arises in this way: Prior to his death Joel McKinney was the owner of a large body of land in that county, a portion of which extended into Powell county, which was known and had been for more than a half century, as the Cottage Furnace tract. That body of land was a complete circle with a diameter of six miles, and in the center of which was a furnace stack which had been constructed many years ago and where a furnace for the manufacture of pig iron had been operated up until some years since the Civil War. Since all the parties

claim title through Joel McKinney, we are not furnished with the title papers to the Cottage Furnace tract from the Commonwealth, but it appears from the record that when that tract was originally patented it was so done by describing the circle and then in a general way excluding therefrom all lands previously patented, which consisted of a number of tracts, the largest of which was about 1,000 acres. The different owners, including Joel McKinney, from time to time sold small portions of the land, and when the latter died, about the year 1900, he owned all of the land within the circular boundary of the Cottage Furnace tract, with the exception of those portions which had been originally excluded from that boundary and the portion which had been sold by the different owners since the issual of the original patent.

Joel McKinney left surviving him many heirs, some near and others remote, and on September 25, 1901, all of his heirs except six brought suit in the Estill circuit court against those six, for the purpose of selling the lands of Joel McKinney, which were inherited by the parties to that suit for division among themselves according to their respective shares. Some of the defendants were infants and others non-residents, but they were properly brought before the court and the case was practiced strictly according to the provisions of law governing such cases, and there is no complaint but that the proceedings in that case throughout were and are legal and valid. In addition to the Cottage Furnace tract, the ancestor, Joel McKinney, owned other lands in other counties of this Commonwealth, and they were also described and sought to be sold and were sold in the proceedings mentioned. Some of the heirs disputed the indivisibility of the land and contended that it could be divided in kind, and upon this issue proof was taken and the court adjudged that the land was indivisible and ordered it sold according to the prayer of the petition. The judgment, in describing and referring to the Cottage Furnace tract, said: "He (Joel McKinney) was also the owner and in the possession at the time of his death of the following described tracts of land in Estill and Powell counties, but lying mostly in Estill; . . . said lands are known as the Cottage Furnace tracts, and is bounded as follows, to-wit." Then follows a description of the circular Cottage Furnace tract, with a general exclusion of prior patents and the

portions sold therefrom before the death of Joel McKinney. The master commissioner advertised the Cottage Furnace tract for sale according to that judgment, but on the day set for the sale, because of some objections by some of the heirs, the sale was not made, and at a succeeding term of the court an amended petition was filed and a motion made for the appointment of a surveyor to make survey of the lands, after taking out the exclusions from the Cottage Furnace tract, which Joel McKinney owned at the time of his death in that tract. This motion was sustained and a surveyor appointed, but he neither undertook nor in any manner performed his duties. The administrator and the attorney representing the plaintiffs, however, did select a surveyor who made a survey and a plat, both of which were filed in the case, and they contained a particular description of a body of land within the circular boundary of the Cottage Furnace tract, said to contain about 3,500 acres, but from which seven tracts of land were excluded, with a more or less particular description, but not showing the number of acres in either exclusion. The Cottage Furnace tract was again ordered to be sold under the same general terms as above quoted but with the description of that tract made to conform to the report of the surveyor. It was sold under this second judgment, but the administrator of Joel McKinney filed exceptions to the sale, the second one of which was: "Because all of the land owned by Joel McKinney at his death and known as the Cottage Furnace tract is not described in the judgment and order of sale herein, or in the commissioner's notice of sale, and the whole tract was not sold by the commissioner in the sale herein complained of." Another exception was that the guardians for the infants had not executed the necessary bonds before the rendition of the judgment, and upon the latter ground the exceptions were sustained and the sale set aside, but to remove the objections stated in the second exception filed, *supra*, the court supplemented the description theretofore contained in the judgment by adding thereto these words: "And this boundary is to include all of the Cottage Furnace lands belonging to Joel McKinney's heirs," which followed immediately the description of the Cottage Furnace tract contained in the judgment under which the first sale was made. Under the judgment as

thus modified the commissioner again offered the Cottage Furnace lands belonging to the heirs of Joel McKinney for sale, and on February 11, 1907, they were sold to S. M. Mapel for the sum of $4,950.00, for which he executed his bonds as directed by the judgment, and which were afterwards collected and the proceeds distributed among the heirs according to their respective shares. Mapel was the purchaser at the first sale, which was had under the judgment not containing the above quoted clause, but which sale was set aside. His bid at that sale was only $4,190.00 for the Cottage Furnace tract. The appraisement of the Cottage Furnace tract at the last sale is in these words:

"We, the undersigned, disinterested housekeepers of Estill county, Kentucky, and not of kin to the parties to this action, having been selected and duly sworn by R. W. Smith, master commissioner of the Estill circuit court, to appraise the tract of land ordered to be sold by judgment herein of the Estill circuit court, at the December term, 1906, containing for whole tract, do value said land at $4,000.00 for whole tract. Witness our hands this 11th day of February, 1907, J. M. W. Covey, Isom Ballard."

The deed of the master commissioner to the purchaser, Mapel, followed the description of the judgment, including the modifying clause, and he took possession of the land. Within a comparatively short time thereafter, not later than the year 1909, he cut all of the timber from the 172 acres involved in this suit, and during that time, or directly afterward, he put some tenants upon it. Prior to that time he had obtained a surveyor to survey all of the land within the boundaries of the Cottage Furnace tract which were included in the judgment, as well as in his deed from the master commissioner, and in that survey was one made of the tract now in question. It lies outside of the boundary made by the surveyor selected by plaintiffs and their attorneys but who, as we have seen, was not appointed by the court to make the survey, and there is between the boundary so described by that surveyor and the tract in question a tract of land containing about 1,000 acres, and which is one of the exclusions from the original description of the Cottage Furnace tract.

The 172-acre tract of land is situated on Cow creek, and is between a half mile and a mile from the boundary

made by the surveyor referred to, but within the circle
bounding the Cottage Furnace tract. The purchaser,
Mapel, continued to exercise acts of ownership over the
172-acre tract in question without objection from any
of the McKinney heirs until about the middle of the year
1916, or for a period of a little more than nine years.
Some of the McKinney heirs, and in fact quite a number
of them, lived in that vicinity, and none of them ever
listed for taxation or paid any taxes on the land in ques-
tion, or any other land which they claim to have inherited
from their ancestor, Joel McKinney. On the contrary,
Mapel, the purchaser, listed the land in the Cottage Fur-
nace tract in a general way without a specific description
of each tract, and according to the record paid the taxes
on what he supposed was all of the tract, to which he ob-
tained title under the master commissioner's deed. In
the meantime and in the year 1913, Mapel executed a
lease upon the 172-acre tract in question to one Dulin,
whereby the lessee, for an accepted consideration, was
given oil, gas and other mineral rights and privileges in
and to that tract. This lease was afterwards sold and
transferred to the Maple Oil Company, and was subse-
quently purchased from that company by the appellee
here, Winfield S. Raydure, he having obtained it in the
year 1915. Directly thereafter he commenced operations
upon the land in question, under the terms of his acquired
lease, and soon developed a rich oil production. At the
time of the filing of this suit by him he had in successful
operation something like nineteen oil wells, each produc-
ing between one hundred seventy-five and two hundred
barrels of crude oil per day. After this successful de-
velopment the McKinney heirs, who are the appellants
here, began to assert claim in themselves to the 172
acres, upon the ground that neither the judgment nor the
deed of the master commissioner which followed it in-
cluded that tract of land, and that it was therefore not
sold and that they are the owners of it as the heirs of
Joel McKinney, their ancestor. In furtherance of this
claim, in July, 1916, they executed a lease of the oil
privileges in and to that tract to one Ice, but at that time
plaintiff (the appellee in this suit) was in the adverse
possession of it, and after consulting an attorney the ap-
pellants attempted to abandon the Ice lease upon the
ground that it was champertous and void and that they

were not bound by it, but it was never rescinded, and on December 2, 1916, plaintiff purchased from Ice all the rights and privileges which he claimed or obtained under that lease.

In the meantime plaintiff and others had purchased the fee to the 172 acres from S. M. Mapel, and on December 14, 1916, he filed this suit against all the heirs of Joel McKinney for the purpose of quieting his title to and leasehold rights in the 172-acre tract in question. He bottomed his right for the relief sought upon the ground that the judgment under which his remote lessor, Mapel, bought the Cottage Furnace tract; and the deed which he received from the commissioner covered and included the tract in question, and also upon the fact that he was the owner of the Ice lease. He furthermore insisted that defendants were estopped by their silence to assert title as against him, since he had openly and notoriously expended upon the land in the way of oil development a sum of money exceeding $100,000.00. He also insisted that defendants' claim, if they had any, was stale, and that they were guilty of such laches as would prevent them from asserting any rights which they might have to the tract in question.

Appropriate pleadings made up the issues, but before submission of the cause the heirs of one Thomas McKinney filed their intervening pleading asserting in themselves title to the tract of land in question upon the ground that years before the death of Joel McKinney he had executed some kind of writing under which one Richard McKinney was to take charge of and rear Thomas McKinney, an illegitimate child of Joel McKinney, in consideration that Richard McKinney should have for his services the tract of land in question until Thomas became twenty-one years of age, after which time the land should belong to the latter, and that pursuant to that writing Richard McKinney did take charge of the illegitimate child, as well as of the land, and that it had been held by him, and after that by Thomas McKinney or his heirs adversely to Joel McKinney and all others under a claim of right, and that petitioners were the rightful owners of the land, their ancestor, Thomas McKinney, having died intestate. This claim was contested by appropriate pleadings, and upon final submission of the case judgment was rendered upholding the

validity of plaintiff's claim and denying that of Joel Mc-
Kinney's heirs and dismissing the petition of the heirs of
Thomas McKinney. To reverse that judgment the heirs
of both Joel and Thomas McKinney prosecute this ap-
peal.

At the beginning it will be seen that the first vital
question presented is whether the judgment under which
the Cottage Furnace tract of land was sold and the com-
missioner's deed to Mapel executed pursuant thereto
in the light of and with the aid of long established rules
for their interpretation and construction, includes the
tract in controversy, for if it should be found, with the
assistance of such rules, that they did include that tract,
we will at once be relieved of considering the other
more or less intricate and lengthily discussed questions
of champerty, estoppel and laches. It is of course in-
sisted by counsel for plaintiff that the land in question
was included in the description in the judgment under
which the Cottage Furnace lands were sold, while counsel
for defendants and the heirs of Joel McKinney contend
to the contrary. Their contention is based upon the gen-
eral rule that in the description of lands, whether con-
tained in a judgment or writing *inter partes,* the particu-
lar description will prevail over a general one when there
is a conflict between them, and that the specific descrip-
tion in the judgment selling the Cottage Furnace tract
as made by the surveyor does not include the land in
question, although the clause added to the judgment and
before the sale—"and this boundary is to include all
the Cottage Furnace lands belonging to Joel McKinney's
heirs"—being a general description, might include it,
still it could not prevail under the rule invoked as against
the particular description which does not include the
tract in question.

In support of their contention counsel for appellants
cite many authorities, among which are Bain v. Tye, 160
Ky., 412; Howard v. Cornett, 151 Ky. 125; Magowan v.
Branham, 95 Ky. 581; Wilkins, v. Norman, 11 Amer.
St. Rep. 767, and notes thereto; Heaton v. Hodges, 30
Amer. Dec. 731, and notes thereto, and 13    Cyc. 631.
There would have been no trouble in lengthening the list
almost without limit, since we presume that no court and
no text-writer disputes the general rule, which indeed
counsel for appellee admit. But a rule of construction

applicable to descriptions of land contained in judgments as well as private contracts, of more potency and even controlling the one for which counsel for appellant insist, is that the intention of the parties as gathered from the language of the entire instrument to be construed, in the light of the facts and circumstances surrounding the parties at the time, must prevail. Bain v. Tye, 160 Ky. 408; Howard v. Cornett, 151 Ky. 125, 13 Cyc. 626 and 631; notes to Wilkins v. Norman, 111 St. Rep. 776, and 8 R. C. L. 1085. And if in the instrument to be construed there is a reference to other records or papers, they may also be looked to for the purpose of ascertaining the intention of the parties.

Another rule which the court may invoke in an effort to ascertain the intention of the parties when called upon to construe doubtful language in the description of the property conveyed by a deed is that "The construction put on a deed by the parties in locating the premises may be resorted to in order to determine their intention when the language of the description renders the location of the land doubtful." 8 R. C. L. 1075, and cases in the notes.

This court, in the Bain case, *supra*, in laying down the general rules which should govern the court in such cases as this, in arriving at the intention of the parties as the primary object to be attained, said:

"The rule for determining what property has been conveyed by a deed is formulated as follows, in 13 Cyc. 626:

" 'The intention of the parties as apparent in a deed should generally control in determining the property conveyed thereby. But if the intent is not apparent from the deed resort may be had to the general rules of construction.

" 'Where the words used in the description in a deed are uncertain or ambiguous and the parties have by their acts given a practical construction thereto the construction so put upon the deed by them may be resorted to, to aid in ascertaining their intention.

" 'The entire description in a deed should be considered in determining the identity of the land conveyed. Clauses inserted in a deed should be regarded as inserted for a purpose and should be given a meaning that will aid the description. Every part of a deed ought if possible, to take effect and every word to operate.' "

The court in its opinion then recites the cases of Trimble v. Ward, 14 B. Mon. 8, and Beatty v. Dozier, 17 Ky. Law Rep. 1275, and then adds:

"Where the description of the property intended to be conveyed is ambiguous, the identity of such property must be gathered from the intention of the parties, as shown by the instrument itself and the accompanying circumstances, such as those surrounding and connected with the parties and the land, at the time. Bowe v. Richmond, 33 Ky. Law Rep. 173, 109 S. W. 359; Clark v. Northern Coal Co., 33 Ky. Law Rep. 1047, 112 S. W. 629; Tanner v. Ellis, 127 S. W. 995; Crews v. Glasscock, 32 Ky. Law Rep. 913, 107 S. W. 237; Jones v. American Association, 120 Ky. 413; Hall v. Wright, 121 Ky. 16; Virginia Iron, Coal & Coke Co. v. Dye, 146 Ky. 519."

It would serve no useful purpose to make other illustrative quotations from opinions or from text-writers, since there is no exception to the rule as announced in the Bain case. The trouble with the contention of counsel for appellants, as we see it, is that he seeks to apply the general rule giving priority to a particular description over a general one, regardless of the intention of the parties to be gathered from the entire instrument, and disregarding the facts and circumstances surrounding the parties at the time, to which, as we have seen, the court may look for the purpose of ascertaining their intention. In cases where there is nothing throwing light upon the intention of the parties, and where it must be gathered *solely* from the description itself, the particular description should no doubt prevail over a general one. But if with the application of the rules alluded to, it should be made manifest that the intention of the parties was that the general description should prevail, then it is the duty of the courts when called upon to give a construction to adopt the one carrying with it the intention of the parties. In this case the master commissioner's deed, under which Mapel purchased the land at the decretal sale, refers, as is usual in such deeds, to the record of the case in which the judgment was rendered, and when we look to that we learn that it was the intention of the parties to that suit, and who are the appellants here, to sell *all* the land that Joel McKinney owned at the time of his death.

In the petition asking the sale in that suit it is said: "They (the owners) desire that all of said lands be sold," &c. So solicitous were they to carry out that intention and desire one of the exceptions to the first sale, as we have seen, pointed out the fact that the surveyor's description of the Cottage Furnace lands was not sufficient to include all of the land owned by the heirs in that tract, and it was because of that exception that the sweeping and general inclusive clause was added to the judgment. That clause says that the land intended to be sold was *all* of the land belonging to the Joel McKinney heirs *in* the Cottage Furnace tract.

The intention of the suit between the heirs of Joel McKinney was to sell and divide the proceeds of all of Joel McKinney's land. In furtherance of this purpose many tracts in different counties were described and sold. There could have been no object or purpose in leaving out a comparatively small tract to be jointly owned by the twenty odd heirs which Joel McKinney left, and who were scattered in different states of the union. As further proof of such being the intention of the parties, their conduct since the sale conclusively shows it. None of the heirs ever, by word, act or deed, even so much as intimated that they owned any land in the Cottage Furnace tract until more than nine years after the sale, and then only after the small parcel here involved was, by the expenditure of a large sum of money, proven to be valuable.

Much discussion is indulged in by learned counsel for appellants to show that it is incompetent in a case like this to show by parol proof what may have been the secret intention of the parties, but we deem it unnecessary to enter into a discussion of that phase of the case, since no such proof is necessary in order to determine what we conceive to be the indisputable intention of the parties to the McKinney suit, in which the sale was made to Mapel. Neither is it necessary to make reference to or discuss the points argued concerning the Ice lease, and the same is true with reference to the questions of estoppel and laches urged and relied upon by appellee.

This leaves for determination the claim presented by the heirs of Thomas McKinney. But little need be said concerning it. In fact it is not seriously insisted

upon in this court. It is not shown that Joel McKinney ever executed any writing to Richard McKinney. It is true that at least one witness says that he saw a writing which Richard McKinney held, but it is not claimed that Joel McKinney's name was signed thereto, nor is the witness by any means clear as to the contents of the unsigned writing which he claims to have seen. However, the testimony shows more probable than otherwise that the arrangement between Joel McKinney and Richard McKinney was that the latter should take charge of the illegitimate child, Thomas McKinney, and receive for his services while performing them the use of the 172-acre tract of land in question, thus making the arrangement one of tenancy and not of sale. There is no evidence of any adverse possession under that arrangement, and this claim made by the heirs of Thomas McKinney is wholly and entirely unsupported.

It results, therefore, that the judgment appealed from is correct, and it is affirmed.