## McKnight et al. v. Johnson et al.

(Decided December 16, 1930.)

H. C. CLAY and GEORGE G. BROCK for appellants.

C. R. LUKER for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

P. L. Johnson owned a farm in Laurel county. On his death the title descended to his son, J. T. Johnson, subject to the dower right of his mother. On July 1, 1927, J. T. Johnson, his wife, Mary Johnson, and his mother, Ruth Johnson, executed and delivered to the North American Fertilizer Company their promissory note for $350, and secured its payment and the payment of other small amounts by a mortgage on a tract of land described as follows:

> "The farm in Laurel County, Kentucky, where first parties now live and containing 100 acres, more or less, and known as the Old Parman Farm and bounded on the North by the lands of Sam Bowling and John A. Johnson, and bounded on the East by the lands of Ben Johnson, on the South by the lands of Aaron Johnson, and on the West by the lands of Aaron Johnson."

On September 5, 1928, the mortgagee brought suit to enforce its lien. The mortgagors were duly summoned, but failed to answer. On November 12, 1928, a default judgment was rendered, and the land was ordered sold. At the sale on December 10, 1928, J. C. McKnight and P. L. Bowling purchased the land for the amount of the debt, interest, and costs, executed bond for the purchase price, and the sale was duly confirmed without exception. As the land brought less than two-thirds of its appraised value, the purchasers who paid the sale bond at maturity were required to wait for their deed until the one-year redemption period expired. The year having expired, and the mortgagors having failed to redeem, the court on December 13, 1929, directed the master commissioner to convey the land to the purchasers. The deed was executed and a writ of possession awarded on December 14, 1929, and placed in the hands of the sheriff for execution.

On January 1, 1930, the mortgagors brought this suit to enjoin the sheriff from dispossessing them of any land except the Parman tract, to quiet their title to the land, and to reform the mortgage. It was alleged in the petition that the farm consisted of four tracts, the Joe Young tract, the Pleas Johnson tract, the Joe Johnson tract, and the remainder of the Parman tract; that the mortgage was executed on the Parman tract of land, and was not meant to cover any other land owned by the mortgagor; that the mortgage was written by George B. Brock, and by mutual mistake of the parties he failed to write the words "and being a part of" at the beginning of the description of the land set out in the mortgage. It was further alleged that, when served with process, the mortgagors understood that the mortgagee was undertaking to foreclose its mortgage on the Parman tract of land, and no other, and for that reason they failed to appear and make defense; that they did not learn that the mortgagee was claiming a mortgage on all the land until a few days before the bringing of this action.

The purchasers, McKnight and Bowling, filed a demurrer to the petition, and, without waiving the demurrer, filed an answer in which they denied the material allegations of the petition, and alleged that J. T. Johnson stated to each of the purchasers prior to the sale that he had mortgaged all the land he owned; that he was present at the sale, understood that all of the land was being offered for sale; that he did not make any

claim that there was any mistake in the description of the land in the mortgage or in the judgment; that they bought the land and paid for it without notice or knowledge of any mistake, and were innocent purchasers for value; and that J. T. Johnson is estopped to assert any claim to any part of the land. After the completion of the issues, evidence was taken by deposition, and on final hearing the chancellor enjoined the sheriff from dispossessing the mortgagors of any of the land except the Parman tract, and quieted their title to the remainder of the land. The purchasers appeal.

J. T. Johnson deposed that Mr. Brock wrote the mortgage; that he gave him the boundary the best he knew how; that his intention "was for the Parman tract, the remainder of the Parman tract;" and that he told Mr. Brock that the land he was mortgaging was known as the old Parman tract or Parman farm. He just gave his neighbors around him. Instead of using the language "being a part of the farm where the first parties lived," he said, "part of the Parman tract." At the time he gave the mortgage he resided on the Joe Young tract. In the remainder of the Parman tract there were 44¼ acres. He had been listing the farm for taxation, and gave it in as he found it, as containing 100 acres. In his opinion, the whole Parman tract before his dad sold part of it contained about 150 acres. He denied stating to the purchasers that he had mortgaged his entire farm. On the other hand, George B. Brock, the attorney who drew the mortgage, testified that J. T. Johnson came to his office, accompanied by Mr. Charles Moore, and asked him to prepare a mortgage. He inquired of J. T. Johnson if he had his deed. Johnson said that he did not, but that his farm was composed of two or three tracts, and that the deed could be gotten at the clerk's office. He replied that it would be difficult to get a description without a surveyor, that, if Johnson would tell him who owned the land on the north, south, east, and west of the farm, he could prepare the mortgage. Johnson did this, and he prepared the mortgage as written. The purchasers both testified that shortly before the sale Johnson told them that he had mortgaged his entire farm.

Though the doctrine of caveat emptor applies to judicial sales, all that this means is that there is no warranty of title, and, though a purchaser of land at a judicial sale who discovers before confirmation of the sale that the title is defective, or that there is no title to be conveyed

to him, may except to the report of sale, and be excused from the payment of the purchase money, he is without relief after confirmation, unless the owner of the land induces the purchase by an express warranty or by representations as to the title. Farmers' Bank of Kentucky v. Peter, 13 Bush, 594; Beale v. Stroud et al., 191 Ky. 755, 231 S. W. 522. Subject to this exception and to the general rule that a purchaser at a judicial sale succeeds only to the interest, estate, and rights of the parties to the proceeding, a purchaser at such sale who has paid his money upon the faith of proceedings regular upon their face had in a court of competent jurisdiction, and without actual or constructive notice of any defects therein or outstanding equities, occupies the position of a purchaser in good faith for valuable consideration, and is protected as such. 16 R. C. L. 139; Voorhees v. Jackson, 10 Pet. 449, 9 L. Ed. 490; Miller v. Sherry, 2 Wall. 237, 17 L. Ed. 827. No rule of law is better settled than that reformation of an instrument will not be decreed as against a subsequent purchaser for value without notice. Johnson v. Beaver Creek Fuel Co., 190 Ky. 499, 227 S. W. 792. Here McKnight and Bowling purchased without any actual or constructive notice of any mistake in the mortgage or judgment, and a reformation as to them may not be had. Not only is this true but, if we were at liberty to consider the evidence, we are confronted by the well-established rule that, to reform an executed contract on the ground of fraud or mistake, the evidence must be clear and convincing, or such as to establish the fraud or mistake beyond a reasonable controversy, Johnson v. Elkhorn Gas Coal Mining Co., 193 Ky. 585, 236 S. W. 1041, and it is at once apparent that the evidence does not come up to this standard.

In view of the foregoing considerations, we must construe the description contained in the mortgage and determine what land it was intended to convey. Appellees rely upon the case of Howard v. Cornett, 151 Ky. 125, 151 S. W. 370, where the deed, after giving the outside boundaries, concluded with these words: "Same boundary being known as the R. Napier farm," and it was held that the entire Napier farm passed by the conveyance. The court reached that conclusion on the ground that the boundary, however described, was intended to be the boundary known as the R. Napier farm. We are unable to apply the same rule to the facts of this case. Extrinsic evidence is admissible to desig-

nate the land identified in the description. Perry v. Wilson, 183 Ky. 155, 208 S. W. 776. The maps and other evidence disclose that the Parman farm originally consisted of more than 100 acres, that the greater portion thereof had been sold, and that there remained only 44½ acres. The farm on which first parties lived embraced, not only the remainder of the Parman farm, but three other tracts known as the Joe Young tract, the Pleas Johnson tract, and the Joe Johnson tract. The remainder of the Parman farm constitutes the northeast portion of the entire farm. It does not touch the lands of Sam Bowling and John A. Johnson on the north. It is bounded on the east only by the lands of Sam Bowling. On the west and south it is bounded by other portions of the farm in controversy. Not only so, but, if the Parman tract be regarded as a separate farm, then the mortgagors did not live on it, but lived on the Young tract. To make the words "and known as the old Parman farm" controlling, we would have to disregard entirely that portion of the description giving the adjoining landowners, as well as the words "the farm in Laurel county, Kentucky, where first parties now live," and hold the description applicable only to a portion of the farm, and that portion on which the first parties did not live. Considering the description as a whole in the light of all the facts and circumstances, we are forced to conclude that the Johnsons intended to mortgage the entire farm, and not merely that portion of it known as the old Parman farm. It follows that the injunction should not have gone, and that the title of appellees to all the farm except the Parman tract should not have been quieted.

Judgment reversed and cause remanded, with directions to enter judgment in conformity with this opinion.

Whole court sitting.