## Isaacs' Guardians v. Isaacs.
(Decided Feb. 21, 1933.)

C. C. ADAMS for appellants.

F. A. HARRISON and A. M. SAMUELS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

On December 27, 1927, Kate Vanarsdall and her husband, Roy Vanarsdall, conveyed to Ella Isaacs, wife of Godfrey Isaacs, a 47-acre tract of land situated in Grant county. On September 16, 1928, Ella Isaacs died intestate, survived by her husband and a grandchild, Waivel M. Isaacs, her only heir at law.

This action was brought by Godfrey Isaacs against Waivel Isaacs, an infant, to reform the deed on the ground of fraud and mistake, and to recover the sum of $1,100 on deposit to the credit of his wife at the time of her death. The chancellor held that Godfrey Isaacs was not entitled to the whole of the $1,100, but entered a decree reforming the deed. Waivel Isaacs appeals.

That portion of the petition bearing on the question of reformation reads as follows:

"He said that on the 27th day of December, 1927, he purchased from Kate Vanarsdall 47 acres of land, hereinafter described, and paid her therefor the sum of Three Thousand Three hundred fifty Dollars ($3350.00) solely and entirely out of his own fund; that his said wife, Ella Isaacs contributed no part of the fund with which to purchase same, but he directed Mr. Harvey Brock, who wrote the deed to said land, to make the deed to him and his wife, jointly, and upon the death of one to the survivor of the other; that by fraud or mistake the said Ella Isaacs, his wife, had said deed made to herself as grantee and plaintiff did not know the difference until after her death when he had the title examined and found the deed made to her; that he is and was unable to read and write and said deed did not express the true contract between himself and his vendor, and was made either by mistake on the part of the draughtsman, and his said wife,

Ella Isaacs, or was purposely placed in her name by the said wife in an effort to defraud him and the heirs of his by his first wife, and plaintiff is unable to state which is correct but he does know that he paid the entire purchase price therefor and directed the deed to be executed as before set out in this petition.''

The evidence for appellee may be summarized as follows; Roy Vanarsdall testified that he knew Godfrey Isaacs and Ella Isaacs. She had no property at the time of her marriage, and did not accumulate any property except what she obtained from him. He made the trade and paid the purchase price out of his own money. Harvey D. Brock, who wrote the deed, testified that Ella Isaacs and Godfrey Isaacs were both present. Ella Isaacs directed how the deed should be made in the presence of Godfrey. He did not think Ella Isaacs made any money that went into the farm, but that Godfrey Isaacs made the money to pay for the place he wrote the deed for. Ella ordered the deed written in her name. Ulysses Jump, cashier of the Jonesville Deposit Bank, testified that Ella Isaacs would cash checks made payable to Godfrey often, and place the money on time deposit in her name. She had no income that he knew of other than that of her husband. About $600 or $700 was deposited in her name in his bank at the time of her death. He did not know who paid the money for the farm. W. L. Isaacs, appellee's son by a former marriage, testified that his father could not read or write. Godfrey made the money for the farm, and Ella did not have any money of her own to buy a farm with. During the past ten years she had not been able to care for herself. Henry Satterwhite, J. W. House, Lizzie Marksberry, and William Caldwell, all testified in substance that they had known Godfrey and Ella Isaacs; that Ella had no property, made no money, and all the property they had was made by Godfrey.

On the other hand, it was shown that Godfrey Isaacs and his wife had been engaged in buying and selling real estate for a number of years, and that in many instances the sale price was larger than the purchase price of the property. It was also shown that the title to several of the tracts purchased was conveyed to Ella Isaacs alone, and that the particular property here involved, which was afterwards sold and then repur-

chased from the Vanarsdalls, was formerly in the name of Ella Isaacs as sole grantee. On being called as a witness for appellant, Harvey D. Brock, who wrote the deed and took the acknowledgments, testified that he knew Godfrey Isaacs and Ella Isaacs. They both came in to have the deed written. She said, "I want you to make this deed to me." He replied, "Make it the way she wants it." She said, "To her and her heirs." Godfrey knew how she directed the deed to be drawn. He was standing behind the desk and heard it. On cross-examination he testified as follows:

"Q. You have heretofore testified in this case? A. Yes, sir, before Arthur Arnold.

"Q. You were sworn? A. Yes, sir.

"Q. You were asked in those interrogatories: 'Who directed you to make the deed and who directed the deed made to Ella Isaacs?' and you answered 'Ella Isaacs.' A. Yes, sir.

"Q. You were then asked this question: 'Was Godfrey Isaacs present on that occasion, if so, what did he state?' and if you did not answer: 'He was present, I do not remember any statements that he made?' A. I can't remember any questions that were asked him.

"Q. Is that your signature? A. Yes, sir.

"Q. Look at that question and see if you didn't answer that question that way? A. Those were the questions.

"Q. Which of those statements is true, the one that he did make those statements or the one that he didn't? A. Under the circumstances I can't remember which he did.

"Q. Your memory was fresher then? A. Yes, sir.

"Q. Which one of these statements was correct? A. I remember it this morning that he told me to make it the way she said.

"Q. Wasn't your memory fresher on May 28, 1930, than it is now? A. I can't say now.

"Q. Which one of these statements is true, the one in which you said that you did not remember any statements that Mr. Isaacs made at the time it was written or the one you make now? A. Well, I can not tell you.

"Q. You don't know? A. I do not."

Afterward he testified that he did not think Mrs. Isaacs made any money that went into the farm.

While a deed may be reformed where by reason of mutual mistake, or mistake on the one side and fraud on the other, or by mistake or fraud of the scrivener, it does not conform to the real agreement between the parties, it is the rule that the evidence must be clear and convincing, or such as to establish the fraud or mistake beyond reasonable controversy. McKnight v. Johnson, 236 Ky. 763, 34 S. W. (2d) 239; Nichols v. Nichols, 182 Ky. 18, 205 S. W. 953. In the light of this rule let us examine the petition and the evidence. The petition alleges that he (Godfrey Isaacs) directed Brock, who wrote the deed, to make the deed to him and his wife jointly, and upon the death of one to the survivor of the other, and that by fraud or mistake Ella Isaacs, his wife, had said deed made to herself as grantee. There is no evidence whatever that appellee told the draftsman to make the deed to him and his wife jointly, and upon the death of one to the survivor of the other, and therefore no evidence that the deed was made to Mrs. Isaacs by mistake or fraud on the part of the draftsman. Nor is there any evidence of any agreement or understanding on the part of appellee and his wife or the vendors that the property should be so conveyed. All that we have is that appellee purchased the property with his own money, and that Mrs. Isaacs had no money.

Opposed to this are the numerous deeds showing that in nearly every instance where property had been purchased and resold, it brought a substantial profit, and further showing that in several instances, including a former purchase of the land in question, Mrs. Isaacs was the sole grantee in the deed. Not only so, but if we omit because of his uncertainty the statement of Brock, the draftsman, that appellee said, "Make it the way she wants it," nowhere in the record is there any contradiction or any circumstances reflecting on the truth of his testimony that Mrs. Isaacs directed him to make the deed to her, and that appellee, who was standing behind the desk, heard her make the statement. Not infrequently husbands purchase property with their own money and have the title conveyed to their wives, just as appellee did on former occasions, and evidence that this was done by appellee, coupled with the fact that he was unable to read or write, is not sufficient to show either fraud or mistake. In short, the case is one where appellant not only failed to show that the deed

as written did not conform to the real intention or agreement of the parties, but the evidence for appellant makes it clear that the deed was written exactly as the parties intended that it should be written. It is at once apparent that the evidence of fraud or mistake did not come up to the required standard, and that reformation should not have been decreed.

Judgment reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.