*Apperson & Reid, for appellant.*

*Tenney, for appellees.*

---

R. L. HENRY AND OTHERS *v.* J. B. SMITH, ETC.

**Assignment for Benefit of Creditors—Pleading—Fraud.**

Where a petition in equity alleges not only actual fraud but also that conveyance was made in contemplation of insolvency, and both actual and constructive fraud is established, the constructive fraud brings the transaction within the act of 1868, and is an assignment for the benefit of the debtor's creditors.

**Assignments for Benefit of Creditors—Pleading—Proof.**

Although actual fraud may be proven under the allegation in a petition that the conveyance was in contemplation of insolvency, the equitable rights of creditors attached when the conveyance was made, and the superior lien could not thereafter be acquired by any creditor in a proceeding at law or equity.

**Assignments for Benefit of Creditors—Notice of Assignment.**

Under Stat. 1856, relating to equitable assignment for the benefit of creditors, before an assignment can affect the rights of creditors in the distribution of the insolvent's estate, the sale or transfer must be such as in law gives the creditor notice of its existence.

**Assignments for Benefit of Creditors—Creditor a Party to a Fraud.**

If a creditor is a party to the constructive fraud by purchasing or obtaining the transfer of the debtor's property for the purpose of securing antecedent debts, and after the commission of an act bringing the cause within the Act of 1856, makes additional payments on the purchase or transfer, or the debtor becomes otherwise indebted to the purchaser, such cause should be rejected, as in such case notice is brought directly home to the creditor.

**Assignments, for Benefit of Creditors—Creditors Who May Participate in the Estate.**

All debts contracted by a debtor between the execution of a bond to convey his land and the date of the deed should, when properly proven, be allowed to participate in the estate of the insolvent debtor.

### APPEAL FROM BOURBON CIRCUIT COURT.

### January 10, 1873.

OPINION BY JUDGE PRYOR:

The appellants, R. D. Henry and wife, had an execution issued from the clerk's office of the Bourbon Circuit Court in their favor against the appellees, J. B. Smith, et al. for one thousand dollars, with the interest and costs. This execution was afterwards returned by the sheriff "no property found." The present suit in equity was then filed by the appellants against J. B. Smith and his father-in-law, Fantleroy Ball, alleging that Smith, for the purpose of cheating, hindering and delaying his creditors in the collection of their debts, had made to his father-in-law a fraudulent conveyance of his real estate, located in or near Millersburg, and that said conveyance was also made in contemplation of insolvency and with the design of preferring his father-in-law, who at the time of the conveyance was a creditor for a considerable amount, and that by reason of the conveyance his whole estate passed by operation of law to all of his (Smith's) creditors for the payment of their debts. The appellees (Smith and Ball) both answer the petition, in which they deny all manner of fraud, either actual or constructive. The appellee, Ball, in his answer, alleges that the consideration of the conveyance was five thousand dollars, eleven hundred dollars of which was paid in cash, and the balance in cash notes which he held upon his son-in-law for money previously loaned him. That the sale of the real estate was made on the 28th of May, 1868, and a bond then

executed to him by his son-in-law for a title, that "said money was paid to said Smith and the notes executed to him at the time said property was purchased, and at the time said bond was executed."

The deed was admitted to record on the 22d of December, 1868. The answer of Smith is in substance similar to the answer of Ball. Upon the hearing of the cause the court below adjudged that the sale and conveyance by Smith to his father-in-law was in contemplation of insolvency and within the act of 1856, and by an order of court referred the cause to a commissioner with directions to take proof of claims, etc., and report; and upon the filing of this report, the rights of the various creditors were determined, to which exceptions were made by both the appellants and appellees, and will hereafter be considered.

The appellants insist that the deed should have been annulled by the court below upon the ground of actual fraud, and that by such a judgment the appellee, Ball, would have been deprived of any right to a pro rata distribution of the proceeds of the property with the other creditors. The effect of such a judgment, however, would be to prefer the claim of the appellants over other creditors, when this preference is not asked for, and when the allegations of the petition sustained by the proof present a case not only of actual fraud, but brings it within the act of 1856. Although the deed may be actually fraudulent, if the petition alleges not only the actual fraud, but also that it was made in contemplation of insolvency, and both actual and constructive fraud is established, the constructive fraud, if such as to bring it within the act of 1868, is an assignment of the estate belonging to the vendor of the property to all his creditors, and vests them with the right to appropriate it for the payment of their debts, and the chancellor has no power to deprive them of this right, although actual fraud may exist.

T his court, in the case of *Shawn v. Utterback*, 2 Metcalfe, 52, whose attachment creditors had levied their attachments upon the property of the debtor, who had made a sale of his property in contemplation of insolvency and these attachments issued upon the alleged ground of actual fraud, directed that the right acquired by the creditors by the levy of their attachments was subordinate to the equitable rights of creditors, created prior to the levy of the attachment, and by the judgment of the court, the attaching creditors were compelled to share only in the pro rata distribution of the

proceeds of the debtor's property, with his other creditors. In the present case, although actual fraud may be proven, still, as the petition alleges that the conveyance was in contemplation of insolvency, etc., the equitable rights of the creditors attached the moment the conveyance was made, and no superior lien could thereafter be acquired by any creditor in any proceeding at law or equity. We are therefore of the opinion, the proof showing clearly that the sale by Smith was made in contemplation of insolvency, and to prefer the father-in-law, Hall, in the payment of his debts, that the judgment determining that the conveyance was within the act of 1856 is sustained by both the law and facts of the case. Many exceptions were filed by the parties to the commissioner's report, and in disposing of these exceptions the charge of actual fraud against the appellees will be considered.

The father-in-law and son-in-law lived in the same house, and had been so living for many years. Ball seems to have been possessed of considerable property, and his son-in-law, Smith, insolvent. Executions were being levied upon his personal effects, as well as the real estate then in his possession. His father-in-law claimed to have held against his son-in-law at the time of the execution of the bond for title in May, 1868, notes and other claims amounting to about eight thousand dollars. With this large amount due him by his son-in-law, in May, 1868, he makes a purchase of this land for the sum of five thousand dollars, all of which was paid, as they state, by surrendering up certain notes he held on Smith, and the payment to Smith of eleven hundred dollars in cash. The notes were surrendered and the money paid (as Ball alleges in his answer) to his son-in-law, at the time the property was purchased, and at the time the bond was executed. The appellees take the depositions of both Smith and wife; the latter, the daughter of Ball, to prove the execution of the bond and the payment of the money. Both of their witnesses seem to be intelligent, and fully aware of the interests involved in this controversy.

Mrs. Smith, the daughter, says she wrote the bond, and if there was any money paid she never saw it. She wrote it at her own home, and in the presence of her father and husband. Smith, her husband, says that he received from his father-in-law at the time of the execution of the bond eleven hundred dollars in money, and when asked by opposing counsel whether he had not a short time

before that received four thousand dollars as a legacy from some relative, and also called upon to state what he had done with both sums of money, responds by saying "that he did not remember." These are the witnesses called upon by the appellee, Ball, to prove the payment of the eleven hundred dollars, and we are satisfied, looking to the testimony of Smith and wife, that the statement made by Mrs. Smith is true, and that no money was paid at the time the bond was executed or afterwards. Smith, after his notes had been surrendered and the alleged acceptance by him of the eleven hundred dollars in money, was still indebted to his father-in-law nearly three thousand dollars, and much of this latter sum due, as they both say, upon an open account that had been standing for several years; and, taking both of their statements as explanatory of their business transactions, we can not conceive why Ball left this open account of long standing unsettled, and not only surrendered up the written evidences of his son-in-law's indebtedness to him, but, as he alleges, paid him eleven hundred dollars in cash "and that, too, when the son-in-law was insolvent." It does not appear from anything in this record that this money was advanced him for the purpose of relieving him from his pecuniary troubles as Smith himself is unable to explain what he did with either this eleven hundred dollars, or the four thousand dollars he had not long since received as a legacy, but says he has no recollection as to the disposition he made of it. The only satisfactory explanation that can be made of this eleven hundred dollars transaction is to determine that Smith never received it, and the exception to the commissioner's report by the appellants as to this claim should have been sustained. Nor ought the appellee, Ball, to have been allowed his claim for rent as against the creditors. The proof of one or two witnesses conduces strongly to show that the use of this land was in consideration of the board of Ball and his wife by Smith. It is true that the obligation of Smith to pay rent is produced and proven to be in the handwriting of Smith; still the father-in-law and his wife had been living with Mrs. Smith for nearly nine years; the proof shows that they were to pay board, and the history of this whole case inclines this court to conclude that no board or hire would ever have been thought of except as a compensation for the land but for this effort upon the part of the appellees to deprive the creditors of Smith from the collection of

their debts; the claim for rent should have been disallowed. It was, perhaps, proper to allow the amount of the notes, as there is proof in the case showing their execution previous to the execution of the deed; or if not, at least showing an advance of moneys by the father-in-law, and for which the notes were doubtless executed, and it may be proper to allow the negro hire, as the use of the land fully compensated for the board, but such of the hire only as accrued within five years previous to the institution of appellants' action should be allowed. The creditors have the right, having a common interest in the fund to be distributed, and the claims presented being a charge on this fraud to rely upon the statute of limitations as against any claim presented, and may raise this question by an exception to the commissioner's report. The bond for the conveyance of this real estate was made in May, 1868, and the deed recorded on the 2d of December, 1868. The grantor, Smith, between the date of the bond and the recording of the deed, created other bona fide debts, and the question is: Did the assignment, so far as it affects the distribution of the assets between the creditors, operate from the date of the bond or the recording of the deed? Whilst the sale, so far as the debtor is concerned, operates as an assignment for the benefit of creditors, still, if a mere bond for title in the pocket of the purchaser, the existence of which is unknown to creditors, and the debtor in the meantime, constantly increasing his indebtedness with those who are dealing with him in good faith and trusting his ability, with the property he has, to pay his debts, is to operate as an assignment by which the subsequent creditors are to get nothing, then the statute itself is productive of more fraud than it was enacted to prevent. The fraudulent debtor would make use of the statute as a means of shielding himself and property from the payment of his just debts. The statute of 1856 is an equitable statute and was enacted to protect the rights of creditors, and not for the purpose of enabling a dishonest debtor to defraud them, and so far as an assignment can affect their rights in the distribution of assets, there must be such a sale or transfer as in law gives to the creditors notice of its existence. If a creditor is a party to the constructive fraud by purchasing or obtaining a transfer of the debtor's property for the purpose of securing his antecedent debts, and after the commission of the act bringing the case within the act of 1856, he makes additional payments on the purchase or trans-

fer, or the debtor becomes otherwise indebted to him, such claims would be rejected, as in such a case notice is brought directly home to the creditor. In the case of *Brown v. Early,* 2 Duvall, this court says, that where there was no ostensible change of possession in registration of the deed or bond before the suit was instituted, the lapse of six months from the date of the initial conduct did not operate as a limitation to the cause of action and that under the statute there was no such constructive notice, as was contemplated.

It therefore follows that all of the debts contracted between the date of the bond and recording of the deed, properly proven, should have been allowed. The amount of money collected from the garnishee, Witt, by Henry and wife should be accounted for by them unless the garnishee was summoned previous to the recording of the deed. If summoned after the recording of the deed, the amount was a part of Smith's estate and the appellants must account for the amount received by them. For the reasons herein indicated the judgment of the court below is reversed and the cause remanded for further proceedings not inconsistent with this opinion. The judgment is *affirmed* on the cross-appeal.

*Alexander, Turney,* for appellants.

*Hanson & Hanson,* for appellees.