## Farmers' Bank & Trust Company v. Peters et al.

(Decided November 23, 1928.)

### Appeal from Nelson Circuit Court.

1.  Fraudulent Conveyances.—Evidence held to sustain finding of past valuable consideration for alleged fraudulent conveyance of property by mother to son, in that son had for number of years advanced money to mother for hospital and medical bills, as well as for her support and maintenance.

2.  Fraudulent Conveyances.—Existence of close relationship of grantor and grantee, misrecital of true consideration, or insolvency of grantor and knowledge thereof by grantee. in alleged fraudulent conveyance, do not conclusively establish creditor's right to have conveyance annulled, but only serve to shift burden from plaintiff to defendant.

3.  Fraudulent Conveyances.—Evidence held not to establish that conveyance by mother to son was either actually or constructively

fraudulent, entitling creditor to have such conveyance annulled under Ky. Stats., secs. 1906, 1907.

4.   Fraudulent Conveyances.—Creditor, suing to set aside conveyance by mother to son on ground it was actually or constructively fraudulent, within Ky. Stats., secs. 1906, 1907, can obtain no relief under section 1910, on ground that conveyance created fraudulent preference, where no facts in support thereof were alleged or proved.

ATKINSON & NICHOLS for appellant.

OSSO W. STANLEY and KELLEY & KELLEY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and a defendant below, A. E. Manning, is the son by her first marriage of another appellee and defendant below, Lizzie Peters, whose present husband, S. H. Peters, is the third appellee and defendant below. In 1919 Mrs. Peters became indebted, by note, to the appellant and plaintiff below, Farmers' Bank & Trust Company, in the sum of $3,000, and to secure it she simultaneously mortgaged a tract of land in Nelson county, to which she held title, containing 238 acres, and which at that time was thought to be and was worth considerably more than the amount of plaintiff's debt. Mrs. Peters also owned a small cottage in Bardstown, in which she and her husband resided, and it, with the lot upon which it stood, was worth, according to the proof, about $2,500, $1,000 of which was exempt under our homestead statute, leaving its value in excess thereof available for the payment of Mrs. Peters' debts. The note to the bank ran along, with no payments made on the principal, but the interest was paid up to December 18, 1924. On June 27 of that year the mortgaged farm was sold to one Purdom, who agreed to assume the debt to plaintiff as part consideration therefor, and to pay the balance of the consideration in a manner not material to this case. He paid six months' interest on plaintiff's debt, and then seems to have abandoned the place, and Mrs. Peters, through her son, A. E. Manning, as her volunteered agent, took charge of the farm and ran it for perhaps a couple of years, with little, if any, profit. In the meantime its worth, because of shrinkage in land values and other causes, was reduced, but the proof does not show that it was not worth plaintiff's debt.

The record discloses that there were some conversations had between the cashier of plaintiff and defendant Manning, with reference to the bank's dissatisfaction with conditions, which resulted in the sale of the land to Purdom, and which was done with the bank's knowledge and consent. There is also testimony in the record, given by the cashier, that some little time prior to July 8, 1925, he notified Manning that, unless the debt was paid or materially reduced, the bank would be compelled to foreclose its mortgage, and it is inferable that such information was communicated to Mrs. Peters. However, before any effort in that direction was made by plaintiff, and on July 8, 1925, Mrs. Peters conveyed to her son her residence cottage in Bardstown for the recited consideration of "one dollar and other valuable considerations."

Plaintiff brought its foreclosure action on September 4, 1925, and obtained a default judgment against Mrs. Peters, and on November 5 thereafter this suit was filed, attacking the conveyance of the residence in Bardstown as having been made in fraud of creditors, including plaintiff, under the provisions of sections 1906 and 1907 of our present statutes, and plaintiff sought the establishment of a lien on that property in its favor and a sale of it in satisfaction thereof. The answer of defendants was a denial of the averments of the petition, with an additional paragraph alleging that the son, during a period of about 10 years preceding the execution of the deed to him by his mother, made advancements to her for her support and maintenance, including physicians' and hospital bills (she during that period being to a considerable extent an invalid), and that such advancements amounted to at least $4,600, and that the conveyance was made in partial satisfaction thereof. That affirmative part of the answer was denied, and after proof taken, and submission of the cause, the chancellor dismissed the petition, and to reverse it plaintiff prosecutes this appeal.

It is strenuously argued in brief for plaintiff that the chancellor erred (1) in his finding of fact that there was a valuable consideration for the attacked conveyance, although it was a past one; (2) in determining that, although there was a valuable, but past, consideration, no actionable fraud, as contemplated by section 1906, was proven; and (3) an intimation in brief that, if the court was correct in its finding of facts (1) and (2), then it

erred in dismissing the petition, since the undisputed facts showed a preference entitling plaintiff to the remedy given by section 1910 of the statutes. We will determine those questions in the order named.

1. In disposing of error (1) but little need be said. The testimony in the record, without contradiction by any witness or by any circumstance, conclusively shows that S. H. Peters, the husband, was for some cause unable to earn a support for himself and wife; that the latter was ill for a large portion of the time during a period of 10 years immediately prior to the attacked conveyance, during which time she underwent one or more operations in a hospital, and incurred considerable medical and hospital bills, all of which were paid by her son, the defendant A. E. Manning, who was not only industrious and earned a respectable salary, but who was also affectionate and dutiful to his mother. In addition to such expenses, he also contributed, as occasion required, considerable amounts to the support and maintenance of his mother, all of which was testified to by those two, and corroborated by plaintiff's cashier, who handled the son's checks issued to his mother. The son was able to conclusively show that he had contributed in that manner for his mother upwards of $4,100, and stated that the amount so contributed by him was considerably larger than that sum, but that he did not have the documents to establish it. The court, therefore, did not err in holding that there was a past valuable consideration for the attacked conveyance.

2. The disposition of error (2) is more difficult. Section 1906, as consistently and frequently construed by us, does not limit the right of a creditor, in an action brought by him thereunder, to have the conveyance set aside and the property or its proceeds appropriated to his debt, only to cases where there was no valuable and adequate consideration for the attacked conveyance, since the relief will be given, notwithstanding such valuable consideration, if the other elements in the statute are proven, and which are, an intent on the part of the grantor "to delay, hinder or defraud his creditors," *and* the grantee had knowledge thereof. Summers v. Taylor, 80 Ky. 429; Beadles v. Miller, 9 Bush 405; Huffman v. Leslie, 66 S. W. 822, 23 Ky. Law Rep. 1981; Walters v. Akers, 101 S. W. 1179, 31 Ky. Law Rep. 259; Shive v. Merritt, 104 S. W. 368, 31 Ky. Law Rep. 978; Allen v.

Ligon, 175 Ky. 767, 194 S. W. 1050; Stewart v. Wheeler, 220 Ky. 687, 295 S. W. 991, and many others referred to in those opinions. Some, if not all, of them, and particularly the Ligon opinion, state what constitute "badges of fraud" in the law, among which are (a) close relationship of the parties; (b) misrecital of the true consideration; (c) insolvency of the grantor and a knowledge of it by the grantee, and perhaps others found in those opinions; and it is argued that such "badges of fraud" are found in this record, and which, at least for the purposes of the case, we might accept as true. However, the cases in which they are discussed do not hold that the existence of such "badges of fraud" *conclusively* establishes plaintiff's right to have the attacked conveyance annulled, but only serves to shift the burden of proof from the plaintiff to the defendant or defendants, and we will dispose of this error under that accepted view of the record.

It is shown by the testimony, and which we have hereinbefore referred to, that the mortgaged farm, at the time the lien was given, was worth far in excess of plaintiff's debt, and there is no proof to show that it was worth any less than the amount of the debt, interest and costs at the time the attacked conveyance was made. In the meantime plaintiff had obtained the additional personal obligation of Purdom to pay its debt, and which did not in any manner diminish the security it already had. It is to be gleaned from the testimony of the mother and son that they thought the bank was amply secured. The mother was growing older and more feeble, and her prior promise to compensate her son to the extent of her ability had not been made; and, unless done before her death, it would, perhaps, never be done, except in so far as what might be realized on the claim of the son against her estate for such advancements by him as were not barred by the statute of limitations. They each testified that they had no intention whatever, in making and accepting the conveyance, to defraud plaintiff or any creditor of Mrs. Peters, but that, on the contrary, it was done for the purpose of partially securing the son for his most commendable and dutiful conduct, and under the belief that plaintiff could and would realize its debt from the sources to which it could otherwise legally look for that purpose. The very atmosphere of the case substantiates that testimony. The chancellor necessarily so found, and this

court on such issues is not authorized to interfere with such finding of fact, where the mind is left in doubt, or unless the finding is against the plain preponderance of the evidence, and which rule of practice has consistently and without exception been followed by this court. We therefore conclude that the court did not err in refusing the relief given by either section 1906 or 1907, supra, of our statutes.

3. No pleading of plaintiff (and it would have to be done in the petition or an amendment thereto) attempted to obtain any relief under section 1910, supra, of the statutes, since there was no averment (but an express denial) of any pre-existing debt to the son (the alleged fraudulent grantee), nor any intent on the part of the mother (the alleged fraudulent grantor) to prefer her son in making the conveyance. It has been consistently held by us that no relief under that section of the Code could be granted, unless such facts were both alleged and proven on the trial, if denied. There was, therefore, no such issues made by the pleading. Among the cases from this court holding such allegations to be an absolute prerequisite to that relief are: Heidrich v. Silva, 89 Ky. 422, 12 S. W. 770, 11 Ky. Law Rep. 645; Bowers v. Huntington Bank, 97 Ky. 294, 30 S. W. 647, 17 Ky. Law Rep. 322; Kentucky Consumers' Oil Co. v. Continental Fuel Co., 171 Ky. 748, 188 S. W. 855; Henry v. Smith, 6 Ky. Op. 278, and others referred to in those opinions.

In the majority of those cases the practice was the same as that adopted in this one; i. e., the action was brought upon the theory that the conveyance was actually fraudulent within section 1906, or constructively so within section 1907, of the statutes, and there was no pleading of the facts necessary to give relief under section 1910, and the court held that none such could be given, notwithstanding the proof showed a fraudulent preference. In some of the cases the action was brought solely to obtain an adjudicated preference, but plaintiff's pleading was not sufficient to obtain such relief, because of a failure to allege the facts upon which it is given under the terms of the statute.

It might be true that it would be competent for plaintiff in the same action to obtain the relief furnished by either of the sections (1906, 1907, or 1910) by pleading in the alternative the necessary facts to obtain it; but,

since we have no pleading in this case authorizing an adjudicated preference, the court did not err in dismissing the petition and in refusing to adjudge it.

Wherefore the judgment is affirmed.