## Lyon et al. v. Harris et al.

(Decided Nov. 9, 1938.)

WHEELER & WHEELER for appellants.

W. J. WARD for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeal is from a judgment for the defendants in a suit to set aside a conveyance as fraudulent within the terms of Section 1906 of the Statutes.

Milt Harris owed the Paintsville National Bank a note for $593.75, which was the renewal, in part, of a debt of long standing. His brother-in-law, Proctor Slone, was surety. Harris was also indebted to others. See Harris v. First National Bank, 266 Ky. 174, 98 S. W. (2d) 468. He owned 180 acres of land but there was a mortgage on 100 acres for what appears to have been all that it was worth. He was clearly insolvent. The trustees ·for the stockholders and depositors of the Paintsville National Bank were pressing him for satisfaction of his debt to it. Harris testified he offered to give a mortgage to further secure the debt, and Mr. Turner, the former president and one of the trustees, promised to look at the place but later reported he would not do so. However, Mr. Turner testified that Harris had discussed giving the bank a mortgage but he

conditioned it upon the release of the personal surety on the note. He, therefore, declined to accept it. He was willing to take the mortgage as further security and agreed to go see it when convenient or have one of the directors do so. But nothing was done about it. Harris' son, Olna Harris, had been working for eight or ten years at a steel mill in Portsmouth, Ohio, for good wages. For some time he had been lending and advancing money to his father who owed him $950. The son testified that he realized his father was in bad financial condition, but not to the extent he actually was, and also that he knew the bank had been pressing him. His father told him he had offered to give a mortgage on the 80 acres to the bank and it had refused to accept it. The family were "romping" on Harris to deed the land to his son and square up his obligation to him. The son testified he insisted that his father sell him the land and settle their accounts. The father wanted $1,400 for it. After some negotiations the price of $1,000 was agreed upon and the son paid $50, and the note and due bill for $950 were surrendered to him in payment for the land. The deed was executed September 7, 1934, acknowledged December 26th, and recorded December 29, 1934. The suit to set it aside was filed shortly thereafter. As stated, the judgment was that the conveyance was not made with the intent to delay, hinder or defraud the creditors.

As pointed out in Campbell v. First National Bank of Barbourville, 234 Ky. 697, 27 S. W. (2d) 975, under Section 1906 of the Statutes, the only questions to be determined are the intent of the grantor and the knowledge of that intent by the grantee, and that [page 977], "In order to protect the purchaser in such cases his good faith must appear, a consideration must pass at the time of the purchase, and it must be a fair equivalent of the thing bought. If either of these essentials is wanting, the sale is fraudulent under the statute."

It is no longer contended by the appellants that the deed to the son was not real or that there was no valuable consideration for the conveyance. The only element to be considered is that of good faith. We start out with the thought that it is not bad intent but good intent that motivates transactions between men. That is the first presumption. But in these cases when certain conditions or "badges of fraud" are developed,

that presumption is destroyed and the burden of rebutting the resulting inferences or of establishing good intention or freedom from fraudulent purposes is shifted to the grantee. Here the only such elements are the close kinship of the parties and the delay in acknowledging and placing the deed to record. As to the former, where there is a genuine indebtedness and a valuable and an equivalent consideration the fact of kinship loses much of its force. As to the second, the circumstances do not indicate that the delay was for the purpose of concealment or to obtain any advantage. Of course, there was an advantage to the one creditor against the others by the execution of the deed but seemingly none by the delay. Had the Bank moved during the interim the pocket deed would have meant nothing to it. The grantee intended to protect himself but we see no intent on his part to defraud the Bank.

The evidence does show a transaction clearly within the terms of Section 1910 of the Statutes, declaring that a conveyance with a design to prefer one creditor to the exclusion of others shall operate as an assignment of all the grantor's property for the benefit of all his creditors in proportion to the amount of their respective demands. The insolvent creditor, Milton Harris, clearly preferred his son to his other creditors, but this is not such a fraud as is contemplated by Section 1906 of the Statutes. The plaintiffs did not seek relief under that statute, but elected to rely upon the charge of a straight-out fraud upon themselves alone. As was held in Farmers' Bank & Trust Company v. Peters, 226 Ky. 403, 11 S. W. (2d) 103, the creditor suing to set aside a conveyance on the ground that it was actually or constructively fraudulent within Section 1906 of the Statutes can obtain no relief on the ground that the conveyance created a fraudulent preference under Section 1910.

The judgment is, therefore, affirmed.