## Chapman v. McDougal et ux.

Nov. 10, 1939.

C. F. See, Jr., for appellant.

Clyde L. Miller for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

Appellant obtained a judgment against the appellee, Mrs. C. O. McDougal, and her brother, M. F. Conley, for $2,070 plus interest and costs. On September 3, 1935, during the pendency of the action in which that judgment was rendered, the appellees, Mrs. C. O. McDougal and her husband, conveyed to one Hattie Huron, an unmarried woman, a business property in Louisa, Kentucky, which, at the time, was encumbered by a mortgage for approximately $2,000 to a local building and loan association. On November 18, 1935, Hattie Huron conveyed the property to the appellee, C. O. McDougal. The latter conveyance was not put to record until March 13, 1936, and there is nothing before us to indicate when the former conveyance was recorded.

On April 16, 1936, appellant instituted the present action to subject the property to her debt, alleging, among other things, that without any consideration the property was conveyed to Hattie Huron "who was, and could only have been a trustee for the defendant, C. O. McDougal," and "That Mrs. C. O. McDougal made said deed of conveyance with the intent, to cheat, hinder, and delay the plaintiff in the collection of her judgment and that said deed of conveyance is therefore void and should be cancelled of record."

The proof for the appellees was to the effect that Mrs. McDougal at the time of the conveyance was indebted to her husband in the sum of $3,500 by reason of his payment of a note for that amount which, with his wife, he had executed in 1930, to his wife's brother, M. F. Conley, in payment for the latter's conveyance to Mrs. McDougal, of his one-third interest in the family residence property which was occupied by Mr. and Mrs. McDougal, and that the conveyance attacked in this ac-

tion was made by Mrs. McDougal to pay the debt thus created, and to prefer him over her other creditors.

Appellees' counsel asks us to apply the long established rule that where a conveyance is attacked as fraudulent and without consideration under Sections 1906 and 1907, Kentucky Statutes, it cannot be set aside upon proof that it was made in satisfaction or on account of a valid preexisting indebtedness, even though it be intended, and operates as a preference and that such a conveyance can only be attacked within the period and in the manner prescribed by Section 1910, Kentucky Statutes, relating to preferences. Counsel's statement of the abstract principle of law which forms the basis of his able argument is undoubtedly correct. Farmers' Bank & Trust Company v. Peters et al., 226 Ky. 403, 11 S. W. (2d) 103; Grand Lodge of Kentucky et al. v. First National Bank of Kentucky et al., 251 Ky. 189, 64 S. W. (2d) 474; and authorities cited. And in the absence of proof of actual or constructive fraud as distinguished from a mere intent to prefer one creditor over another, we would have no alternative but to affirm the judgment of the lower court dismissing the petition, since appellant did not allege originally or by an amendment that the conveyance was made with the intent to prefer the grantee over other creditors.

Our examination of the testimony however, convinces us that the conveyance attacked in this action was made with the intent to delay, hinder, or defraud. The property conveyed was originally owned by M. F. Conley and is known as the Big Sandy News Building. In it, Mr. Conley and his sister, Mrs. McDougal, conducted a publishing business, although the details of her connection with the enterprise do not appear. At all events, Mr. Conley, by January, 1935, had become heavily indebted, as had apparently also Mrs. McDougal, and on January 24, 1935, he conveyed the property to her. At or about the same time, the date not being definitely shown, Mrs. McDougal and her husband mortgaged the residence property to the Louisa National Bank to secure an indebtedness of approximately $4,000. Mr. Conley says that the indebtedness secured by this mortgage had been previously incurred by Mrs. McDougal in the purchase of stock in the enterprise from one Grote. He further says that he conveyed the Big Sandy News Building to Mrs. McDougal without monetary consideration and because he was "obligated to her

and wasn't able to take care of it.'' Although it was necessary that the husband unite in this mortgage in order to give it validity, he made no effort to protect his alleged debt. In fact, he did not take from his wife a note or any other writing to evidence its existence. His conduct in this respect indicates that he regarded the expenditure which he had made to complete his wife's title to the residence property, as a gift to her rather than as a loan. The result of these transactions is that appellant is unable to collect her judgment since the residence property is encumbered approximately to its full value and the title to the business property is vested in her husband. When it is noted that the debt for which appellant's judgment was rendered was evidenced by a promissory note executed by Mrs. McDougal and indorsed by Mr. Conley on January 1, 1935, and that the deed from Hattie Huron to Mr. McDougal was not recorded until approximately four months after its execution, and that the title remained in Hattie Huron for two and a half months following its conveyance to her on September 3, 1935, the motives underlying the transaction become suspect. They are removed from the realm of speculation by the testimony showing that Hattie Huron, apparently a stranger to the parties, was brought from Ohio to act as an intermediate grantee on the advice of Mr. Conley's attorneys who thought it best to use a non resident for the purpose; by the testimony showing that Mr. Conley promoted and conducted all the transactions referred to; by the testimony showing that Mr. and Mrs. McDougal on April 14, 1936, at the instigation of Mr. Conley executed and recorded a fictitious mortgage on the property to one B. J. Calloway; and by other circumstances not necessary to enumerate. It is sufficient to say that the testimony leaves no reasonable doubt that the conveyance of the business property to Mr. McDougal was but the final step in a series of transactions designed to put the equity in the business property beyond the reach of Mr. Conley's and Mrs. McDougal's judgment creditor and preserve it for Mr. Conley's benefit. Accordingly, the judgment is reversed for further proceedings consistent with this opinion.

Judgment reversed.