## Whitaker v. First National Bank

(Decided March 18, 1915.)

### Appeal from Laurel Circuit Court.

1. Bills and Notes—Renewal Note—Unsoundness of Mind of Maker.—Where a note was executed in renewal of another note, the fact that the maker, at the time of the execution of the last note, was of unsound mind, did not present a good defense to a suit on the note, it being admitted that he was of sound mind when the original note was executed.

2. Bills and Notes—Renewal Note.—A note executed in renewal of another note given when the debt was created was not the creation of a new debt, as the debt was created when the original note was executed, and the renewal did not extinguish this original indebtedness.

3. Bills and Notes—Void Renewal Note—Suit on Original Undertaking.—Where a renewal note is void, or not enforcible for any reason, suit may be brought against the maker on the notes the renewal note was executed in place of, or, in their absence, on the original undertaking.

4. Trial—Continuance.—It is not error to refuse a continuance on the ground that a witness is absent when the trial judge gives to the party asking it reasonable opportunity to produce the absent witness and he declines to take advantage of the offer.

CLAY & BOREING for appellant.

SAM C. HARDIN and HAZELWOOD & JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellee bank brought suit against the appellant Whitaker on a note for $2,575, and, notwithstanding the defenses that were interposed, obtained a judgment, which Whitaker is now seeking to have reversed.

This note, except $75 interest contained in it, is a renewal of a note for $1,500 executed by H. Lyons & Sons Stave Company, with Whitaker as surety, to the bank in August, 1908, and a note for $1,000, executed in

January, 1909, by the same parties, to the bank. These two notes were renewed a number of times between their date and the execution of the note now in controversy.

One of the defenses made by Whitaker was that at the time this $2,575 note was.executed he was suffering from a mental infirmity that amounted to unsoundness of mind, and therefore he did not understand the nature or quality of his act in signing his name to this note. The court refused to instruct the jury on this subject, and of this his counsel complain. But we do not think the court committed error in thus ruling.

There was no judicial finding that Whitaker was ever of unsound mind, but there is evidence in the record that at the time, and for several months before, as well as some months after the execution of this note, Mr. Whitaker was laboring under a mental infirmity that amounted to legal unsoundness of mind. But we do not think it very material, in determining the rights of the parties, to consider his mental condition at the time this note was executed, as it is conceded that Whitaker understandingly executed the notes of which this note was merely a renewal. Memphis National Bank v. Neely, 97 Tenn., 120, 34 L. R. A., 274.

The note 'sued on, although it may have been executed at a time when Whitaker was of unsound mind, was not the creation of a debt or an original undertaking on his part. The debt for which he became liable and which was evidenced by this $2,575 note, was created when the two original notes were executed, and the various renewals of these two notes, culminating in the note sued on, did not extinguish this original indebtedness. The evidence only of it was changed.

Under this state of facts, the circumstance that Whitaker was of unsound mind when he signed the note in suit did not in any manner affect his liability for the original debt or on the original notes. His liability was not increased by the execution of the $2,575 note, nor were his legal rights in any manner prejudiced by the fact that he signed this note. If this note had not been executed, or if it should be admitted that it was void, or not enforcible because of his mental condition, or for other reasons, suit could have been maintained against him on the notes in the place of which it was executed, or, in their absence, on the original undertaking. Stratton v. McMakin, 84 Ky., 641; Traders Deposit Bank v.

Day, 105 Ky., 219; Corydon Deposit Bank v. McClure, 110 S. W., 856.

In 1907 the H. Lyons & Sons Stave Co. were engaged in the manufacture of staves in Laurel and perhaps other adjoining counties, and were doing a large business. They wanted to borrow some money from the bank to use in the conduct of their business, and induced Whitaker to become their surety in these two notes. Whitaker testifies that he signed these notes as surety under an agreement with the bank, through its cashier, Fitzgerald, that the bank would take out of the proceeds of every carload of staves that was shipped by the H. Lyons & Sons Stave Co. $100 and apply the amount so taken as a credit on these notes until they were satisfied. There is also evidence tending to show that the money received for each carload of staves that was shipped by this firm passed through the hand of the bank, and that in this way the bank received enough money to satisfy the indebtedness for which Whitaker was surety. The cashier of the bank, however, denied that any such agreement was made, and the jury, having before them the evidence offered by Whitaker that the agreement was made and the evidence offered by the bank that it was not made, gave more weight to the evidence for the bank than they did to the evidence for Whitaker, and accordingly found for the bank upon this issue.

But, notwithstanding this finding of the jury, it is now insisted that the verdict was flagrantly against the evidence, and, therefore, the judgment should be reversed.

We think the weight of the evidence was with Whitaker, but yet it cannot be said that the finding of the jury was flagrantly against the evidence. Two witnesses testified one way and one the other. Counsel for Whitaker in their brief say that the agreement was made by Whitaker with Jackson, the president of the bank, who did not testify in the case at all, and this being so, there was no contradiction of the evidence of Whitaker or Lyons. We have read the record quite carefully on this point and do not think it supports counsel in their statements. Whitaker testifies that the agreement in respect to both notes was made with Fitzgerald, the cashier, although he does say that afterwards he told Jackson, the president of the bank, about it, and Jackson said it was all right. Lyons, the other witness for Whitaker, testifies to substantially the same thing.

Under circumstances like these we have uniformly and in many cases refused to interfere with the finding of the jury upon the ground that the jury is as well qualified as we are, if not better, to settle correctly disputed questions of fact.

Another reason assigned for reversal is the refusal of the trial judge to grant a continuance on account of the absence of one Jack Whitaker, a witness for H. M. Whitaker. When the case was called for trial a motion for continuance was made on the ground of the absence of Jack Whitaker, an important and material witness for H. M. Whitaker, but the motion for a continuance was overruled.

We find in the record an order made by the trial judge giving his reasons for refusing the continuance, in which he said that ''The court has indicated to defendant's counsel that this case might be passed until a later day in this term in order that defendant might procure the attendance of this witness, or take his deposition, if they desired, but defendant's counsel makes no such request. The court has also indicated that if they desired his personal attendance and would make the proper showing the court would consider this; but neither the defendant nor his counsel makes any request of this nature. For these reasons the court is of the opinion that the showing is not sufficient, and the motion to continue is overruled.''

The facts stated in this order not being controverted or questioned, it appears that the trial judge offered every reasonable opportunity to procure the personal presence or deposition of this absent witness, but that counsel for Whitaker did not, for reasons doubtless satisfactory to them, see proper to avail themselves of the opportunity presented to secure the evidence of this witness, and they are not in a position to complain of the action of the trial court in refusing a continuance under the circumstances.

The instructions given by the court are criticised, but we have carefully read them and think they presented to the jury in easily understood words the only issue in the case, which, as stated by counsel for appellant, was whether or not there was an agreement between the stave company, the bank and appellant to keep out and apply as payment on the notes $100 per car for each carload of staves so shipped.

Another ground presented is the refusal of the trial court to grant a new trial for newly-discovered evidence. Whitaker made an affidavit stating, in substance, that since the trial he had learned for the first time that T. F. Barnes and Stephen Barnes were present and heard a conversation between Fitzgerald, the cashier, and Whitaker, in which Fitzgerald said that the bank "had held back $1,700 out of the payment for certain staves sold by H. Lyons & Sons Stave Company and collected and paid for through said bank for the purpose of applying the same as a payment and credit on a note of defendant held by said plaintiff bank against said stave company, or H. Lyons, on which the defendant, H. M. Whitaker, was surety; that the $1,700 was held out for the purpose as above stated under a contract between plaintiff bank and H. M. Whitaker so to do, and that there was at that time the sum of $1,700 so collected by the plaintiff bank in payment of said note and to be credited thereon; that this conversation was also heard by his brother, Stephen Barnes."

With this he filed the affidavit of T. F. Barnes containing the statements mentioned.

This evidence would have been material for Whitaker; but, curiously enough, we do not find that on the trial Whitaker gave any intimation that a conversation of this kind was had with Fitzgerald. All that Whitaker says about the matter is that Fitzgerald at one time told him that $400 had been received by the bank to be applied as a credit on the notes. It would also appear that if the bank had retained out of the money of the stave company that passed through its hands credits to be applied to these notes, the bank books would show something about it. But no effort was made by Whitaker to secure evidence that might have been discovered by the bank books. There is some evidence showing that the books of the bank, or at least a part of them, were destroyed in a fire, but when this fire occurred or what books were destroyed the evidence does not show.

After considering the matter of this newly-discovered evidence carefully, we have reached the conclusion that, under all the circumstances, a new trial should not have been granted on this ground.

Wherefore, the judgment is affirmed.