## Evans v. Stapleton, et al.

(Decided January 29, 1924.)

### Appeal from Johnson Circuit Court.

1. Reformation of Instruments—Fraud Must be Shown by Clear Evidence.—To reform an executed contract on the ground of mistake, the evidence must be clear and convincing, or such as to establish the mistake beyond reasonable controversy.

2. Reformation of Instruments—Oil Lease Not Reformed as Against Subsequent Purchaser.—An oil lease will not be reformed as against a subsequent purchaser for value without notice.

3. Reformation of Instruments—Person Held Original Party Against whom Reformation Might be Decreed.—Where agent acted for defendant in obtaining new oil lease, which by mistake named a rental other than that in original lease, and the new lease was taken in defendant's name, he was an original party, rather than a subsequent purchaser, without notice, against whom reformation for mistake might be decreed.

4. Pleading—Mistake Sufficiently Alleged as Against Objection After Judgment.—A pleading asking reformation for mutual mistake was sufficient as against objection after judgment, where facts alleged showed that mistake was mutual, though the word "mutual" was not used.

PRICHARD & MALIN and KIRK & KIRK for appellant.

HOWES & HOWES for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming on original appeal and reversing on cross appeal.

On August 14, 1918, Samantha Stapleton, Paris Stapleton and Clara Stapleton, his wife, executed, acknowl-

edged and delivered to D. T. Evans an oil and gas lease on a one-hundred acre tract of land located in Johnson county. The consideration was $150.00 cash and the mutual covenants and agreements set forth in the lease. The lease obligated the lessee to commence a well on the premises within six months, or thereafter to pay in advance a quarterly rental of $12.50 from February 14, 1919, in lieu of development. The rentals were to be paid by checks mailed to the lessors at Flat Gap, or deposited to their credit in the Paintsville National Bank. The rentals were regularly paid as provided in the lease, but the lessors declined to accept payment.

On June 30, 1920, this suit was brought by the lessors to cancel the lease on the ground that the lease first executed provided for a quarterly rental of $25.00, and that after its execution and delivery it had been materially altered by changing the quarterly rental from $25.00 to $12.50. The evidence for the lessors is in substance as follows: The lessee, Evans, was engaged in procuring leases through Geoffrey Jeffreys, who employed G. G. Auxier to assist him in the matter. Evans and Jeffreys were working together, and Auxier received as many orders from Evans as he did from Jeffreys. Auxier first procured from the lessors a lease to Jeffreys, providing for a cash consideration of $150.00 and a quarterly rental of $25.00. On the delivery of this lease to Evans and Jeffreys, objection was made to the certificate of acknowledgment, and Auxier was directed to have the lessors execute a new lease to Evans. The new lease was intended merely to take the place of the lease which had been executed to Jeffreys, but, by mistake of the draftsman, the quarterly rental was fixed at $12.50 instead of $25.00. On the other hand, Evans claims that his only contract with Jeffreys was to buy at certain prices leases which Jeffreys procured, that he knew nothing of the original lease which the Stapletons made to Jeffreys, and that the only lease which he ever saw was the new lease which he received, paid for and put to record.

When the foregoing facts were developed, the Stapletons filed an amended petition to conform to the proof, and asked that the lease be reformed on the ground of mistake, and that they be given judgment for the past due rentals at the rate of $25.00 quarterly. On final hearing the chancellor adjudged a reformation of the lease in accordance with the prayer of the amended petition, but provided in the judgment that as Evans, the lessee, was

innocent in the matter, he might surrender the lease upon the payment of the quarterly rental of $12.50 up to the date of the surrender, but if he desired to hold the lease as reformed, he should pay the lessors a quarterly rental of $25.00 from the time the first rental was due. From this judgment the lessee has appealed, and from that portion of the judgment giving the lessee the right to surrender the lease upon the payment of the rental at the rate of $12.50 quarterly, the lessors have prosecuted a cross appeal.

The rule is that to reform an executed contract on the ground of mistake, the evidence must be clear and convincing, or such as to establish the mistake beyond reasonable controversy. Lamastus v. Morgan's Committee, 178 Ky. 805, 200 S. W. 32; Johnson v. Elkhorn Gas Coal Mining Co., 193 Ky. 585, 236 S. W. 1041. Without detailing the evidence at length, it is sufficient to say that all those who were present or participated in the transaction deposed that the parties agreed on a lease calling for a quarterly rental of $25.00, and that the lease to Jeffreys so provided, but in changing the lease to Evans, at the request of Evans and Jeffreys, the quarterly rental was fixed at $12.50 instead of $25.00 as intended by the parties, and there can be no doubt that the requirements of the rule were fully met.

It is true that an oil lease will not be reformed as against a subsequent purchaser for value without notice (Sonora Oil & Gas Co. v. Harris, et al., 194 Ky. 734, 240 S. W. 382), but in our opinion Evans does not occupy that position. Not only did Auxier act for him in obtaining the new lease, but the new lease was taken in his name. Therefore, he was an original party against whom reformation might be decreed.

But it is insisted that there was no plea of mutual mistake. It is true that the word "mutual" was not used, but the facts alleged showed that the mistake was mutual, and there can be no doubt that the amended petition was good after judgment in the absence of any prior objection to its sufficiency. Home Insurance Co. v. Chowning, 192 Ky. 327, 233 S. W. 731.

Having reached the conclusion that the lessors were entitled to a reformation of the lease, it necessarily follows that that portion of the judgment authorizing the lessee to surrender the lease upon the payment of the quarterly rental of $12.50 up to the date of the surrender was error. After decreeing reformation, the chancellor

should have given the lessors judgment for the past due rentals at the rate of $25.00 quarterly.

Wherefore, the judgment is affirmed on the original appeal and reversed on the cross appeal, with directions to enter judgment in conformity with this opinion.