## Swiss Oil Corporation v. Hupp et al.

(Decided June 27, 1928.)

E. L. McDONALD, D. L. HAZELRIGG, KIRK, KIRK & WELLS and HOLT & DUNCAN for appellant.

S. S. WILLIS, E. C. O'REAR, WHEELER & WHEELER and JOUETT & METCALF for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is the second appeal of this case. The former one was styled "Union Gas & Oil Co. v. Gillem," and the opinion therein is reported in 212 Ky. 293, 279 S. W. 626. The judgment there involved was reversed for reasons stated in the opinion, and upon a return of the case it was manifested by an amended pleading that since it was rendered and before the issuing of the mandate the Union Oil & Gas Company sold all of its interest in the matters here involved, as well as in all others, to the Swiss Oil Corporation, and by appropriate orders the latter was made a coplaintiff in the cause, and which accounts for a change in the style of the case. The first opinion states the essential facts up to the time of the rendition of the judgment from which that appeal was taken, and it will not be necessary to repeat all of them here, since they can be found by consulting that opinion. Upon a return of the case to the trial court, Mrs. Moore and the owners of the Swope interests, both of which are dealt with in the opinion referred to, voluntarily entered their appearance in the cause and filed their answers, which they made cross-petitions against plaintiffs, and in them they alleged their ratification, not only of the notice given by Gillem, the lessor, but also of all of the subsequent forfeiting acts taken by him. They furthermore alleged that the instrument executed by Gillem to Mrs. Moore and of date July 23, 1920, instead of being an outright deed to the fractional part of the oil under the land mentioned therein (as it so appeared on its face) was in truth and in fact intended to evidence only an assignment of one-half of Gillem's royalty, and they prayed that it be reformed so as to express such alleged true intent of the parties. Likewise, after the return of the cause, plaintiff Union Oil & Gas Company filed its amended petition and procured summons to issue for the Moores and the owners of the Swope interests, and

they were so brought into court, although they had previously entered their appearance.

Other facts were alleged in that amended petition, followed by other appropriate pleadings, until there was presented to the court by plaintiff for determination three main and controlling issues over which the legal battle was to be waged and fought, and which were: (1) That the owners of the Moore interest (and which as determined in the former opinion was on the face of the paper creating it an absolute interest in a part of the oil underlying the leased land so as to make the vendees therein joint tenants of the fee in and to such minerals) never ratified Gillem's effort to forfeit plaintiff's lease in such a manner as to perfect that right or to continue it under his notice alone, but that on the contrary, after he so notified plaintiff to develop, etc., as set out in the former opinion, such owners of the Moore interests ratified plaintiff's lease and, in effect, repudiated Gillem's efforts to forfeit it, and during which time and while it was so kept alive plaintiff proceeded to develop the lease at great expense; (2) that the owners of the Moore interest were actually before the court when the former opinion was rendered, but if not true, they were substitutionally so, because the litigation from its beginning, up to and including a return of the case, was not only ratified by them, but was prosecuted with their agreement and consent as well as their active participation and in such a manner as to make any judgment rendered therein binding on them; and (3) that the lessees in the top or cap lease, referred to in the former opinion, and the owners of all interest carved out of it, could not maintain cross-actions because the lease was tainted with champerty or maintenance so as to deprive them of any cause of action to enforce it or any rights under it, as against one claiming an adverse interest.

The plaintiff affirmed each of those three issues both as to the facts supporting them as well as to their legal effect, while defendants contended to the contrary. After taking extensive proof the case was submitted to the court for final judgment, and it canceled plaintiff's lease and refused to quiet its title as prayed for in its pleadings. It also sustained the forfeiture of plaintiff's lease and quieted the title of all owners in the mineral under the top or cap lease, and directed that an accounting be taken of the amount of oil extracted by plaintiff while operating under its lease; and to reverse that judgment

plaintiff prosecutes this appeal. We will first consider and determine issue (1).

If the law as announced in the first opinion, to the effect that Gillem's efforts to bring about a forfeiture of plaintiff's lease were ineffective, unless ratified and joined in by his cotenants (the owners of the Moore interest), is correct, then it necessarily follows that the judgment was erroneous, if the testimony established the facts contained in issue (1) We have read the testimony bearing upon the facts of that issue more than once, and to our minds there can be but one conclusion reached therefrom. There is but little if any contradiction of the testimony relating thereto. It shows that, commencing at a time antedating Gillem's notice, the Moores were extremely solicitous that the Union Oil & Gas Company as the owner of the original lease should not only commence development operations, but diligently and continuously prosecute and enlarge them after they were commenced. Not only so, but they went so far as to promise plaintiff that they would pacify Gillem and exert their influence to procure him to abandon his efforts to forfeit plaintiff's lease, and they otherwise worked in perfect harmony with plaintiff as the continued owner of the original lease, thereby demonstrating their nonacquiescence in Gillem's efforts to procure a forfeiture. By such conduct they also encouraged plaintiff to proceed with the development under its lease, with at least the implied assurance that it would not thereafter be disturbed by further insistence on its forfeiture, the beginning step for which Gillem had taken. After plaintiff had completed two paying wells, and which it did with such harmonious co-operation with the owners of the Moore interest, the latter signed divisional orders to the pipe line company that was taking the oil from the two developed wells for the amount of the oil to which they were entitled, and the record is completely barren of any fact looking to a retraction by them of any of their previous acts and conduct until they signed the top lease, under which defendants claim, on December 20, 1921, but which, we repeat, was after the development of the two wells by plaintiffs during the time that the joint owners with Gillem were co-operating and encouraging it in the manner above stated.

There is practically no contradiction in the testimony upon the facts as above related, and under the first opinion, supra, the right of forfeiture never became com-

plete, and before the arrival of the time therefor plaintiff had changed its attitude by incurring the expense of sinking the two profitable wells, and which was done while its lease was so kept alive. Under well-established and well-known principles of the law, as well as under our first opinion, it was then too late for the joint tenants of Gillem (owners of the Moore interest) to withdraw their encouragement and other ratifying acts and conduct from plaintiff and to transfer them to defendants so as to operate against the former and to the benefit of the latter. Differently stated, plaintiff had the right to act upon the face of the appearances arising from the creation of a joint tenancy and the conduct of the incoming tenant, and if from them no forfeiture could be asserted the right to develop continued, and, if done by it under such circumstances, its lease would be preserved with its further right to continue its operations thereunder unmolested; and which is bottomed on the theory that the automatic forfeiting effect of Gillem's notice was interrupted by his conveyance to Moore and by which the latter was given a joint right to suspend or defeat the purpose of the notice before it became complete and final. Such (as we have hereinbefore intimated) is the effect of our former opinion as to the law upon such facts, and to which we still adhere.

But, in avoidance of such effect it is most strenuously insisted by defendants: (a) That the final ratification by the owners of the Moore interest of Gillem's effort to procure a forfeiture and of his execution of the top or cap lease, although done after plaintiff had developed their two producing wells, related back to the beginning of Gillem's notice and to his execution of the top or cap lease and operated to effectuate a forfeiture of plaintiff's lease based upon those acts of Gillem; and (b) that if mistaken in avoidance (a), then the reformation sought by the Moores of the conveyance to them of their interest, so as to convert it into a mere assignment of a portion of Gillem's royalty interest, operated to destroy their joint tenancy in the oil under the land, as held in our former opinion, and that such reformation would relate back to the date of that instrument, and which, if true (according to the former opinion), would not require their co-operation with Gillem in his efforts to produce a forfeiture of plaintiff's lease. But we do not find the law in accord with defend-

ant's contention as to either of those avoidances. We will first dispose of avoidance (a).

Mr. Page, in the late edition of his excellent work on Contracts, vol.. 3, secs. 1770 and 1806, states the law as it is universally declared by both courts and authors to be that ratification might, as between the immediate parties and for some purposes, relates back to the date of the thing ratified, but that it would have no such retroactive effect as against a third party acting in good faith upon the appearances. In the first section referred to the author makes the broad statement that: "Ratification cannot destroy intervening rights of third persons." The other section referred to is to the same effect. The text in 21 R. C. L. 922, sec. 100, announces the same doctrine, and it is approvingly discussed by Mr. Freeman in his annotations to the case of Atlee v. Bartholomew, reported in 5 Am. St. Rep. 103, the annotations referred to being on page 114, a part of which says:

"Third persons have the right to treat an unauthorized act or contract, while it remains unratified, as having no existence whatever. If it (contract) purports to affect the title to property, they (third persons) may nevertheless deal with such property, if it be the property of the party who did not authorize the contract or act, and may acquire the title thereto or secure liens thereon, whether by the voluntary act of such party, or by legal proceedings prosecuted against him, and he cannot by any subsequent ratification of the unauthorized act give it any retroactive effect as against them (third persons), nor impair their title or lien in any respect."

The same principle was approved by us in the case of Evansville, Russellville & Owensboro Railway Company v. Louisville Banking Company, 9 Ky. Op. 150, wherein we said:

"A principal with full knowledge of all the facts is bound at the earliest reasonable moment to disavow the unauthorized act of his agent; otherwise in a case where a third person may sustain loss the act will become his own. 1 Chitty on Contracts 291; 2 Kent's Com. 216."

While the matters involved there were different from those involved here, the principle of law so announced is equally applicable here. The ratification in that case

was with reference to a contract made by an agent for his principal, while in this case it applies to the approval by one joint tenant of an act done by his cotenant and of the approval of the legal consequences and effect of such act, and which after all is the adoption of the act by the ratifier as one done for his benefit by his cotenant acting as agent for him. It is, therefore, clear that there can be no legal distinction between the facts of the two cases. We have found no authority to the contrary, and were we inclined to lengthen this opinion we feel assured that additional authorities and precedents in support thereof could be multiplied almost without limit. The principle of law as so announced is akin to the doctrine of estoppel and, in effect, creates one. If that be true, and the delayed ratifier becomes estopped to have his ratifying act relate back, then it is the same as if he had never attempted such ratification, and which, as applied to this case, would be the same as if the Moores were now insisting upon plaintiff continuing development under its lease, and which if true would serve to continue the vitality of that lease under the principles announced in our first opinion and to which we still adhere.

But, defendants also claim the relief for which they prayed, and which the judgment gave them, under avoidance (b) supra; but which we are convinced is equally without merit. Conceding, though not determining, that the evidence was sufficient to authorize the reformation contended for as between the parties to the involved transactions, the law seems to be well settled that no reformation may be had to the detriment of intervening rights of third parties, and which doctrine has been recognized and applied by us in the cases of Doherty v. First National Bank, 161 Ky. 202, 170 S. W. 615; Evans v. Stapleton, 201 Ky. 716, 258 S. W. 295; Sonora Oil & Gas Company v. Harris, 194 Ky. 734, 240 S. W. 382; White Grocery Company v. Moore, 190 Ky. 671, 288 S. W. 679; Johnson v. Beaver Creek Fuel Company, 190 Ky. 499, 227 S. W. 792; Lewis v. Carr, 5 Ky. Law Rep. 429, and Barbee v. Northern Bank of Kentucky, 3 Ky. Law Rep. 57. It is therefore clear that, even if we should concede the right of defendants under the Moore interest and Gillem to a reformation of the conveyance by the latter to the former, it could not operate to the detriment of plaintiff, the original lessor.

It is insisted, however, that defendant was all the time aware of the character of interest transferred by

Gillem to Moore. But we do not so interpret the evidence or other parts of the record. It is true that in one of plaintiff's pleadings (the precise one we do not now remember, but which we read in the transcript) a reference was made thereto; but that was done after the owners of the Moore interest had changed front because of the promised bonus to them by the cap lessees, and the president of plaintiff had been most emphatically informed that such was the then claimed intention of Gillem and Moore assumed by them, so as to remove any obstacle in the way of forfeiting plaintiff's lease under the principles hereinbefore, and in our former opinion announced. On the contrary, up to the time that Moore and Swope joined in the top lease, Moore was claiming the right to an absolute interest in all the oil covered by the conveyance by Gillem and also with the same proportionate part of the royalty under plaintiff's lease. No one can read this record without becoming thoroughly convinced that the change of attitude by the owners of the Moore interest was superinduced by the large bonus paid and agreed to be paid to them by defendants on condition that they would join in the top or cap lease executed by Gillem, and which is evidenced by a collateral contract executed to them by defendants contemporaneously with their joining in that lease. We deem it unnecessary to elaborate the discussion, since what we have said is abundantly sufficient to establish the principle announced in our former opinion in this case, and which was in substance, that if the owners of the Moore interest did not stand by Gillem in his efforts to produce a forfeiture, but stood by plaintiff in its efforts to defeat the forfeiture and to develop its lease and later encouraged it in expending large sums of money in accomplishing such development, then no forfeiture of plaintiff's lease resulted.

The conclusions above expressed render it unnecessary to discuss or dispose of either of the issues (2) or (3). But before closing we do not deem it amiss to say that the pleadings and proof contained in the record furnish strong support for contention (3). Since, however, it is unnecessary to do so, we will not enter into a discussion of the facts relating to it, nor do we now adopt a settled view concerning it.

For the reasons stated the judgment is reversed, with directions to set it aside and to enter one quieting plaintiff's title to its rights under its lease and to dismiss

282

defendant's counterclaim and set aside the judgment in favor of the owners of the alleged interest under the top lease, and to adjudge an accounting in favor of plaintiffs as against such defendants, with a reference of the cause to the master commissioner for that purpose, and for other proceedings consistent with this opinion.

Judge WILLIS not sitting.