## Powell's Trustee in Bankruptcy v. Powell.

(Decided December 6, 1929.)

28

RAYBURN & WITHERS and C. H. LISMAN for appellant.

C. W. BENNETT and C. J. WADDILL for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Roy Melton, trustee in bankruptcy of the estate of Henry Powell, bankrupt, brought a suit in ejectment against the appellee, T. A. Powell, to recover possession of a tract of 156 acres of land in Webster county. It was alleged that the land was owned by Henry Powell at the time he was adjudged a bankrupt. The salient facts are not in dispute.

The appellee, T. A. Powell, is the son of Henry Powell. It appears that in July, 1917, Henry Powell gave the land in controversy to his son and delivered to him a general warranty deed to the land executed by Henry Powell and his wife. T. A. Powell married in September, 1917, and shortly thereafter took possession of the land. He moved on the land and has been in possession thereof continuously since that time. The land was listed by him for taxation as of September 1, 1917, and has been assessed annually in his name for taxation since and the state and county taxes have been paid by him. When Henry Powell gave this land to his son, he owned several other tracts of land in Webster and adjoining counties and was worth approximately $100,-000. Several years thereafter he incurred a large indebtedness. Most of these debts were obligations of others on which he was surety. On account of the shrinkage in value of his farm lands, he became insolvent, and in November, 1927, filed a voluntary petition in bankruptcy in the United States District Court. All of his then existing indebtedness was incurred by him subsequent to the conveyance to his son.

The deed from Henry Powell and wife to their son was never recorded. About a year after its execution and delivery the son, who lived a considerable distance

from the county seat, delivered it to his father and directed him to leave it at the county clerk's office for recordation. The father failed to have it recorded, but T. A. Powell believed that it had been recorded until about the time his father went into bankruptcy. He then learned for the first time that the deed had not been recorded and had been lost or destroyed. T. A. Powell filed an answer, counterclaim, and cross-petition, in which he set out the above facts and asked that his title to the land be quieted. Henry Powell and his wife were made parties.

In his reply the plaintiff alleged that the claimed conveyance was fraudulent and, since it was unrecorded when Henry Powell went into bankruptcy, was void as to his creditors. He also alleged that during all the time that T. A. Powell was in possession of the land Henry Powell claimed it as his own, collected the insurance on certain buildings thereon destroyed by wind, and scheduled the property as an asset in the bankruptcy proceeding, in all of which T. A. Powell acquiesced. On motion of the plaintiff the case was transferred to the equity docket, and upon its submission the chancellor adjudged the defendant, T. A. Powell, the owner in fee of the land.

It is appellant's contention that under section 496 of our Statutes the deed executed by Henry Powell and wife, and delivered to T. A. Powell and never recorded, is void as to subsequent creditors of Henry Powell. The father neglected to lodge for record the deed intrusted to him for that purpose by his son—he says that he did not go to the county seat and that he put it in his desk and just failed to carry out his son's directions—and several years later, after considerable indebtedness had accumulated, he destroyed the deed in the belief that the title would revert to him. He destroyed it because he was then financially unable to give a like amount to each of his other children. When he filed his schedule of assets in the bankruptcy proceeding, believing that the title to the land had reverted to him by reason of his destruction of the unrecorded deed, he listed this land as an asset and informed his son that the deed had not been recorded and had been destroyed and advised him that he could assert no claim to the land. The son for a while accepted his father's view of the condition of the title and acquiesced in the proposed plan of treating it as a part of his father's assets. Later he was advised that

he could hold the land, since the destruction of the unrecorded deed did not deprive him of the title that had vested in him, and this litigation followed.

These facts convince us that both father and son acted in the utmost good faith when the transaction occurred so far as creditors, antecedent or subsequent, were concerned. It is suggested that the son was of draft age and the conveyance was made to enable him to avoid military service, but, even so, that was no fraud on the creditors. The gift at the time it was made represented approximately one-seventh of the net value of Henry Powell's estate, and was not disproportionate to his circumstances. Section 496 of the Statutes reads:

> "No deed or deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed or mortgage shall be acknowledged or proved according to law and lodged for record.
> "The word 'creditors' as used herein shall include all creditors irrespective of whether or not they may have acquired a lien by legal or equitable proceedings or by voluntary conveyance."

Construing this section in Stone v. Keith, 218 Ky. 11, 290 S. W. 1042, 1044, it was held that an unrecorded deed is invalid as to creditors without notice thereof. The purchaser in that case had taken possession of the land prior to the levy of an attachment thereon by an antecedent creditor. The court said: "Here, when appellee, Everett Keith, took possession of the tract of land, he put all persons on inquiry as to the character of his possession and claims; and appellant, an antecedent creditor, by subsequently attaching cannot be said to have obtained his equity without notice. To hold otherwise would be to open wide the door to fraud which the statute in question was enacted to prevent. In purchasing the property of another one is not required to ascertain what debts he owes further than such debts as may be secured by lien upon the property being purchased so evidenced that he is chargeable with notice. He must always, however, look to the claims of those in the possession of such property."

If the statute applies to an antecedent creditor, it necessarily applies to a subsequent creditor. The learned chancellor (Hon. C. S. Nunn, who was agreed upon by the parties to preside at the trial in lieu of the regular judge, who was an attorney in the case), in a written opinion, the reasoning of which we approve, said in part:

"I am convinced that section 496, about recording, is the only statute, that applies to the case, and, as interpreted by the court in the Stone v. Keith case, the creditors must be held to have had notice, and therefore the deed was not only valid as between the father and son, but was valid as to the creditors as well. The consideration for the deed was valuable as between the father and son, and it was not fraudulent as to creditors. Such creditors as there were then have been satisfied, or they are not complaining now. Creditors subsequently lending money to the father, who was the vendor, must be deemed to have had notice of the deed by reason of the son's possession.

"Some facts are urged by the plaintiff as reflections upon the son's possession; for instance, it is said that the son at times suffered his father to pasture stock on the place, and at another time the father tended some four acres of cow peas. The court is of the opinion that these facts were not at all inconsistent with the son's possession and claim of ownership; neither is the fact that within 5 years after the conveyance the father collected the proceeds of a tornado policy on a barn, and with the proceeds contracted and paid for the reconstruction thereof. The insurance company might have successfully resisted recovery on account of the change of ownership. No doubt the policy was issued in the father's name, and it is a reasonable inference that it was issued before the date of the deed and never transferred. This is not unusual, nor are five year policies uncommon. We cannot regard these facts with reference to insurance as evidencing the assertion of possession by the father, or the relinquishment of it by the son. Nor were the facts such as to in any wise influence any persons in their business transactions with the father. All the circumstances warrant the belief that there would have

been no fewer or different creditors of Henry Powell had the deed to his son been in fact recorded.

"But plaintiff suggests that possession under the alleged terms of the deed was not enough to put creditors on notice that the possessor was claiming a fee title. As pleadings are construed most strictly against the pleader the question was raised by demurrer, and is still pertinent. Plaintiff says that possession for a limited time, or for life was consistent with the allegation that the father and mother 'gave this defendant the tract of land described in the petition; and pursuant to said gift they duly executed, acknowledged and delivered a deed of general warranty to this defendant, etc.' The argument is that defendant should in any event he held to the minimum of title alleged. But in answering the question as to whether the legal title was conveyed by the words, 'give, grant and convey,' the court, in Young v. Ringo, 1 T. B. Mon. 30, said: 'The words employed, "give, grant, and convey," are as comprehensive as any which could have been employed, and are as efficient in law to transfer the title.' And in my opinion either word is as comprehensive and inclusive as all combined for the purpose of passing title, and the use of either, without limitation or reservation, or qualifyifig words, will effectively pass the whole title. Anyhow, it is incumbent upon the prospective purchaser and creditors to enquire as to the nature and extent of the claim of the one in possession."

The character of appellee's possession of the land was such as to put all persons dealing with the title on inquiry. His possession was actual, open, and unequivocal, and was notice of whatever title he claimed. Any one dealing with the property could have learned the facts upon due inquiry. Horseshoe Coal Co. v. Fields, 207 Ky. 172, 268 S. W. 1078; Marceiliac v. Stevens, 206 Ky. 383, 267 S. W. 229; Smith v. City of Kuttawa, 222 Ky. 569, 1 S. W. (2d) 979.

The jndgment of the lower court being in accord with the views herein expressed, it is affirmed.