## Gilbert et al. v. Watts, Ritter & Company.

(Decided May 5, 1933.)

28

CHAS. B. SPICER for appellants.

FORESTER & CARTER for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Reversing.

For some time prior to November, 1930, and thereafter, B. F. Gilbert was engaged in the mercantile business at Wallins Creek, Ky., with Dave Middleton, under the firm name of Gilbert & Middleton. Beginning in the latter part of November, 1930, the appellee, a wholesale dry goods firm in Huntington, W. Va., sold and delivered from time to time to the firm of Gilbert & Middleton certain merchandise until the latter firm became indebted to the appellee in a balance of $827.70. In July, 1931, suit was brought upon this account in the Harlan circuit court, and in August, 1931, judgment by default was rendered for the appellee. Thereafter an execution was issued on this judgment, and on the 11th day of September, 1931, was levied on three lots in the town of Evarts in Harlan county, the record title to which at that time was in the name of B. F. Gilbert. On the 10th day of September, 1931, the lis pendens notice of this execution was duly filed. On October 5, 1931, the sheriff sold under the execution above mentioned the three lots in Evarts upon which that execution had been levied, and the appellee bought the property in for its debt, interest, and cost. On the 18th day of December, 1931, the sheriff executed and delivered to the appellee a deed for the property which it had bought under the execution sale. On the 28th day of December, 1931, pursuant to the provisions of section 1689 of the Statutes, the appellee caused a notice to be served not only on B. F. Gilbert, but also on his children, notifying them that it would at the next term of the Harlan circuit court enter its motion for a writ of possession for the property in question. When the February term of the Harlan circuit court came on, the appellee, in accordance with its notice, did enter its motion for the writ of possession mentioned. B. F. Gilbert allowed the

motion to go by default, but his children, the present appellants, defended the motion, first, with an effort to have the notice quashed and the motion overruled on the ground that they were not proper parties to the motion in that they were not defendants in the execution under which the property had been sold and bought by the appellee, and, secondly, by a response which set up these facts: That their mother, the wife of B. F. Gilbert, had died in 1926 intestate, the owner of a large acreage of coal lands which had been leased to sundry coal companies; that since the death of their mother, B. F. Gilbert, their father, who was the administrator of their mother's estate, had collected the royalties from said coal leases, which royalties, aside from so much of them as belonged to him by virtue of his dower interest in his wife's estate, belonged to these children, but which their father had used in the purchase of various pieces of real estate, including these three lots in Evarts, taking the title to such real estate in his own name; that in October, 1930, and before their father had become indebted at all to or had ever ordered any goods from the appellee, he executed a title bond agreeing to convey to his children the real estate set out in that title bond, including these lots in Evarts, in settlement of his children's claim against him because of his use of the royalties belonging to them as above set out; that immediately on the execution of this title bond one of the children, J. M. Gilbert, for and on behalf of himself and the other children, went into possession of these three lots in Evarts, and that he had for himself and the other children continuously since said time held possession of these three lots by himself or his tenants; that in September, 1931, the children brought suit against B. F. Gilbert to compel him to execute a deed in conformity with his title bond, which suit B. F. Gilbert allowed to go by default; that on October 8, 1931, judgment was entered adjudging the children the relief they sought against their father and directing the master commissioner to execute a deed in accordance with the judgment which the master commissioner did on October 13, 1931. By virtue of the facts hereinbefore set up, these children averred that their claim to these lots was superior to that of the appellee. By reply, the appellee asserted that these transactions between the children and their father with reference to the title bond, the suit, and the deed of the master com-

missioner were all entered into for the purpose of permitting B. F. Gilbert to cheat, hinder, delay, and defraud his creditors, for which reason they were all void as to such creditors. By agreement, the affirmative allegations of this reply were controverted of record. The court overruling the motion of the children to quash as against them the notice of the motion for a writ of possession, the parties went to trial on the issues raised by the response and the reply. After proof heard, the court awarded the appellee the writ of possession it sought, and from that judgment this appeal is prosecuted.

The appellants first argue that the court improperly overruled their motion to quash as against them the notice of the motion for the writ of possession. It is true that section 1689 of the Statutes provides in part that the notice of a motion for a writ of possession of land sold under an execution shall run against "the defendant in the execution," but construing that section, it has been held that in a state of case where it is claimed that a debtor has conveyed his property away for the purpose of cheating, hindering, delaying, or defrauding his creditors, the latter may ignore such conveyance, have the property sold under execution as belonging to the debtor, and secure possession of it by a writ of possession, notice of which ran against not only the defendant in the execution but also the alleged fraudulent grantee. Combs v. Miller, 149 Ky. 546, 149 S. W. 906.

The evidence on the hearing of the merits disclosed without any contradiction that immediately on the execution of the title bond in October, 1930, by B. F. Gilbert to his children, although it was not then recorded nor has it ever been so far as this record shows, J. M. Gilbert, one of the children, entered into possession of the property and has remained in such possession through himself or by his tenants from that time to the present. Appellee made no showing whatever as to the manner or character of B. F. Gilbert's possession of these three lots in question prior to J. M. Gilbert entering into their possession. We are thus constrained to the conclusion that the possession of J. M. Gilbert and his tenants as testified to by him since the execution of the title bond in 1930 was such a notice as to put subsequent creditors as appellee was upon inquiry as to the

character of J. M. Gilbert's possession and claims. It was expressly so decided in Powell's Trustee in Bankruptcy v. Powell, 232 Ky. 27, 22 S. W. (2d) 293. There is an entire absence of proof that at the time of the execution of this title bond in 1930 B. F. Gilbert was indebted to any one or that this title bond was executed with the purpose of thereafter incurring debts which the grantor did not intend to pay, although it is true that by the title bond, B. F. Gilbert agreed to convey to his children all the property he then owned or which then stood in his name. There is no contradiction whatever as to an indebtedness of B. F. Gilbert to his children because of his use of the royalties arising from the coal lease, although the extent of such indebtedness is questioned. Indeed, appellee relies almost entirely to support its contentions upon the fact that the title bond was unrecorded, and the further fact that in the summer of 1931, B. F. Gilbert in the absence of his children swore, for the purpose of qualifying as surety on some bonds executed before the county judge, that he was the owner of these lots in Evarts. We have seen that the fact that the title bond was unrecorded did not excuse appellee from making inquiry as to the character of J. M. Gilbert's possession of this property and his claim to it. This possession and claim began before appellee sold the firm of Middleton and Gilbert any goods.

Further, the statement of B. F. Gilbert made in the summer of 1931 as to his ownership of this property is not binding on his children in the absence of some showing of connivance on their part with him to defraud his creditors. There was some claim that these lands were assessed for the 1931 taxes in the name of B. F. Gilbert, but the 1931 taxes were based on the assessment as of July 1, 1930, which was almost four months before the execution of the title bond under which these children and under which J. M. Gilbert entered into the possession of the property in question. We are of opinion that the record utterly fails to show that this title bond was executed to defraud B. F. Gilbert's creditors. Indeed, it is not shown that he ever owed any debts except the one due his children for the royalties used by him and the one due to this appellee and which was incurred after the execution of the title bond. It was not even shown that appellee's debt or any other was in contemplation at that time. J. M. Gilbert's possession of

the property as testified to by him without contradiction put appellee on notice as to his claim at the time it sold the goods to Gilbert and Middleton. It results, therefore, that the appellants' claim to these lots is superior to that of the appellee and that the trial court erroneously adjudged that the latter was entitled to a writ of possession.

The judgment is reversed, with instructions to dismiss the writ as to the appellant children of B. F. Gilbert.