## First Nat. Bank of Williamson, W. Va., v. Williamson et al.

(Decided March 15, 1938.)

LON B. ROGERS, J. J. MOORE, and HENRY J. SCOTT for appellant.

FRANCIS M. BURKE, J. ERWIN SANDERS, and A. S. RATLIFF for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming in part and reversing in part.

The appeal is from a judgment for the defendants in a suit to set aside a conveyance as a fraud upon a creditor.

Mrs. Edna B. Williamson, in the distribution of her deceased husband's estate, was allotted as dower a life interest in a 14.5-acre tract with improvements, and a life interest in one-third of the royalties from a coal lease of 130 acres, of which it is a part. See Williamson v. Williamson, 223 Ky. 589, 4 S. W. (2d) 392. She also received other property. Some time thereafter she purchased from the heirs three lots in Williamson, W. Va., and erected four buildings on them at a total cost of $31,600. She borrowed $5,400 from the First National Bank of Williamson without surety or security. She subsequently sold one of these lots and buildings for $11,000. The original note was given in December, 1924, and was renewed every thirty days. W. J. Williamson, the brother of Edna's deceased husband and the husband of her sister, Ellen B. Williamson, died in 1929. He had been the president of the appellant bank. His widow received about $20,000 from his estate and had considerable property of her own. She could not read or write and depended to a considerable extent upon her sister Edna to attend to her business affairs. The two elderly sisters lived together after their widowhood.

In July, 1931, Edna Williamson purchased from the heirs of her deceased husband a one-half remainder interest in the 14.5-acre tract. On October 12, 1932, she conveyed her entire interest and title in this property to her sister Ellen for the recited consideration of $3,000 cash and a $2,000 note. The deed was not put to record until five and one-half months later, on March 28, 1933.

It appears that the bank had been pressing Mrs. Williamson on the old indebtedness. However, it accepted a renewal of the note, as we have stated, on

March 24, 1933. In January, 1934, the bank obtained a default judgment on the note, the principal being $5,350. No execution was issued until January 10, 1936. It was returned "no property found." Thereafter the bank instituted this suit to set aside the conveyance of the 14.5-acre tract to Ellen Williamson as coming within the terms of section 1906, Kentucky Statutes, declaring a conveyance to be void if made with the fraudulent intent to cheat, hinder, and delay the grantor's creditors, and the terms of section 1907 of like effect if it was without valuable consideration. It also alleged the conveyance to be void under section 496 of the Statutes providing that no deed shall be valid against a creditor without notice until it shall be lodged for record.

At the time of the conveyance, according to the evidence for the defendants, Mrs. Williamson was not in financial difficulties, as her West Virginia property was worth about $22,000, and was mortgaged for only $9,500. It was rented for $110 a month and her financial affairs were being cared for. At some undisclosed time, probably after the suit had been filed, she offered either to give the bank a second mortgage on this property or convey it in satisfaction of the note (the evidence not being clear which it was), but the bank declined to accept the offer as it considered her equity of little value. This property was sold under foreclosure in 1935 and bid in by the mortgagee for the amount of its debt. The bank officers testified they had no knowledge of the previous conveyance of the Pike county property when the note was renewed in March, 1933, and that if they had known of such conveyance, the note would not have been renewed.

The two sisters testified that Ellen Williamson had advanced the money with which Edna had purchased the one-half remainder interest in the property. The last advancement on this account was made in July, 1932, about three months before the conveyance. At the time, Edna had agreed to sell the property, including her interest in the royalties, to her sister. The royalties had been assigned to another bank for the payment of a debt she owed it. Paid and canceled checks were introduced which substantiated their testimony that not only had this money, amounting to $2,637.43, been advanced, but other sums had been loaned by Ellen to Edna in recent months, the aggregate being more than $3,000, stated as the cash consideration for

the conveyance under attack. A note for $2,000 had in fact been executed and delivered for the balance of the consideration. This was corroborated by the attorney who had written the deed and the note was filed in evidence. The note was satisfied by two transactions. On June 9, 1929, Ellen had paid her sister $1,000 on the purchase price of certain property in West Virginia which she had agreed to buy, but which purchase was not consummated. Edna was indebted to Lydia Blankenship in the sum of $1,000. In December, 1932, it was agreed that Ellen should credit the note with $1,000 she had paid on the West Virginia property and the oral agreement was canceled, and that she would assume the debt to Lydia Blankenship. This note was filed by the payee as an intervener in this suit and default judgment for it rendered against both parties. By reason of an attachment Mrs. Blankenship was adjudged a lien, and it appears the judgment was satisfied out of funds which had been impounded by the court. There is no contradiction of all this evidence, and it may be safely said that the $5,000 for the conveyance was actually paid, although no cash was passed at the time of the conveyance.

The delay in having the deed recorded is explained by Mrs. Ellen Williamson as being neglect. Fred Blair, a nephew of the defendants, testified that after October 12, 1932, he had collected the rents on the property for and in behalf of Mrs. Ellen Williamson. While at her home he asked about the deed, and when it was shown to him he observed that it should have been recorded, and he and Mrs. Williamson went to Pikeville the next day and had it lodged for record. Two witnesses had testified the entire property at the time was worth $8,000, but exceptions to their testimony were sustained. The court will not presume the value of the interests conveyed to be so disproportionate as to show fraud in such particular.

Thus it appears that the "badges of fraud" which the appellant maintains were disclosed were fairly and clearly explained away and the transaction shown to have been for a valuable consideration and in good faith as measured by the terms of sections 1906 and 1907 of the Statutes. Hord v. Green, 241 Ky. 641, 44 S. W. (2d) 549; Coy v. Pursifull, 249 Ky. 57, 60 S. W. (2d) 93. The case is like Farmers' Bank & Trust Company v. Peters, 226 Ky. 403, 11 S. W. (2d) 103, in that the con-

veyance was preferential within the provisions of section 1910, but the plaintiff did not seek relief under that statute.

The terms of section 496 of the Statutes apply to (1) creditors becoming such subsequent to the conveyance or mortgage whether they be secured or unsecured; and (2) antecedent creditors who at some time prior to the recording of the instrument had secured some equity in the property. Mason & Moody v. Scruggs, 207 Ky. 66, 268 S. W. 833; Arnett v. Stewart, 266 Ky. 557, 99 S. W. (2d) 704. The ground upon which the appellant claims relief under this statute is that the renewal note sued on, which was executed four days before the conveyance was lodged for record, constituted it a subsequent creditor without notice. It appears there were previous renewals since the execution of the deed on October 12, 1932. The bank had been an unsecured creditor of the grantor for perhaps eight years and the renewal of the note evidencing the debt did not extinguish it or create a new indebtedness; it only changed the evidence of it. Pryor v. Smith, 4 Bush 379, 382; Kibbey v. Jones, 7 Bush 243, 244; Bank of America v. McNeil, 73 Ky. 54, 10 Bush 54, 56; Whitaker v. First National Bank, 163 Ky. 623, 174 S. W. 47. So the appellant cannot be regarded as a subsequent creditor within the contemplation of the statute and the remedy provided by it is not available.

Following the habendum of the deed from Edna Williamson to Ellen Williamson, which is under attack, there is the following paragraph:

"The grantor does likewise hereby sell, assign, and convey unto the grantee all rights, title and properties accruing and to accrue unto the grantor herein in and to the real estate and interest in real estate hereby granted and conveyed, including all of the rights of the lessors in all leases in and to the said real estate, or any part thereof, or the improvements on any said real estate; and this grant is made subject to all of said leases."

The description is defective and does not cover the grantor's rights in the royalties from the lease of the entire 130 acres. They had been previously assigned to the satisfaction of another debt. In this suit Ellen Williamson asked that the deed be reformed so as to convey those rights and interests. Both parties and the

attorney who drew the instrument testified positively and unequivocally that it was the purpose to transfer all those rights and interests. The attorney testified that he thought the deed had contained such conveyance until his attention was called to the omission, and confessed that it was his mistake and that he had made a bad job of drafting the deed. There was no evidence of any character to the contrary. The court accordingly adjudged the reformation and directed appropriate proceedings to effectuate the judgment. The contention of the appellant that this reformation should not have been decreed therefore is not supported by the record. Bronston's Adm'r v. Bronston's Heirs, 141 Ky. 639, 133 S. W. 584; Lemastus v. Morgan's Committee, 178 Ky. 805, 200 S. W. 32.

But there is a further question. Since the reformation came after the bank had secured an attachment lien, could it be prejudiced thereby? Ordinarily and actually the reformation of an instrument is retroactive and attaches to the property contemporaneously with its execution as it is simply making the instrument read as was intended. It is generally held that the equity of reformation is superior to and operative against attachment creditors or general creditors, for they do not stand in any better position than their debtor. 23 R. C. L. 343; Jones v. Anderson, Ky., 116 S. W. 253. But no reformation may be had to the detriment of intervening rights of innocent third parties, such as assignees or purchasers for value without notice. Johnson v. Beaver Creek Fuel Company, 190 Ky. 499, 227 S. W. 792; Sonora Oil & Gas Company v. Harris, 194 Ky. 734, 240 S. W. 382; Evans v. Stapleton, 201 Ky. 716, 258 S. W. 295; McKnight v. Johnson, 236 Ky. 763, 34 S. W. (2d) 239; Swiss Oil Corporation v. Hupp, 232 Ky. 274, 22 S. W. (2d) 1029; Sheppard v. Koch, 234 Ky. 1, 27 S. W. (2d) 389. Such rule of equity is written into section 496 of the Statutes, by which we are controlled in this case. As we have stated, that statute declares that a deed is void against a creditor who became such before its execution if he obtained an equity, such as an attachment lien, prior to its being put to record. We think the same must be held where that equity attached before reformation. There was no publicity of the conveyance of the royalty rights, and, as the record stood, the debtor, Edna Williamson, still owned that property when the attachment was pro-

cured upon the filing of this suit by the bank. The mistake or negligent omission from the deed should no more be permitted to affect adversely the creditor than the negligent failure to place the complete and correct instrument of record. We, therefore, hold that the rights of a creditor who obtains a lien on property, the record title to which is in his debtor, cannot be defeated by a subsequent decree having the effect of transferring that title as of a date antecedent to the acquisition of the lien.

The judgment is affirmed except to the extent that it does not recognize the rights of the appellant in the royalties as thus determined. To that extent only the judgment is reversed. Whole court sitting.