### EASTERN KENTUCKY PRODUCTION CREDIT ASS'N v. SCOTT et al.

Court of Appeals of Kentucky.
March 14, 1952.

Rehearing Denied May 9, 1952.

984

Diederich & Lycan, Ashland, McIntire & McIntire, Flemingsburg, William C. Goodwyn, Louisville, for appellant.

Phipps & Phipps, Ashland, for appellees.

SIMS, Justice.

The question for determination is, does the reformation of a deed making it convey the property the parties intended, defeat an attachment lien of a bona fide creditor levied on the property while it stood in the name of the debtor? The chancellor granted appellee reformation and held the reformed deed took precedence over the attachment.

There are practically no contrarieties in the facts. Appellee, Mildred Scott Holbrook, obtained a divorce from Darwin Scott and subsequently married John H. Holbrook. For the sake of brevity and to avoid confusion, we will refer to Mrs. Holbrook as Mildred and to Mr. Scott as Darwin. On Oct. 17, 1946, Mildred sued Darwin for an absolute divorce and on that day the parties entered into a separation agreement which recited she relinquished all claim for alimony, as well as her distributive share in Darwin's estate, in consideration of "one dollar and other valuable consideration, receipt of which is acknowledged". Simultaneously with the execution of this settlement agreement Darwin executed to Mildred a deed conveying her a 50 foot lot on the east side of Broadway in Catlettsburg. The conveyance of this property was the real consideration of the separation agreement, as we understand it. The separation agreement was incorporated in the divorce judgment entered Dec. 7, 1946, but no reference was made therein to the conveyance.

Darwin owned two adjacent lots in Catlettsburg on the east side of Broadway. One was a 50 foot vacant lot immediately adjoining the Presbyterian Manse and the other was a 46 foot lot which contained a two-story brick apartment and was immediately north of the vacant lot. The descriptions of these two adjacent lots were such that they could easily be confused. The description of the vacant lot began at the northwest corner of the Manse property, while the description of the 46 foot lot began 50 feet from the northwest corner of the Manse property and each extended back 105 feet to an alley. It was the intention of Darwin to convey Mildred the 46 foot lot containing the apartment building and she thought she was receiving that property. By mistake the draftsman of the deed inserted the description of the vacant lot and Mildred was conveyed it rather than the lot containing the apartment.

When Mildred married Holbrook she went to Seattle, Washington, to reside and never knew of the mistake in her deed until this litigation arose. She listed the apartment property for taxation, paid the taxes thereon, rented the apartments and made minor repairs and improvements on the property. There is no doubt that Darwin intended to convey her the apartment property and there is no doubt that Mildred in accepting the deed thought it conveyed the lot containing the apartment. Darwin and Mr. Harry Price, the attorney who drew the deed for Mildred, both testified it was the intention of Darwin to convey Mildred the apartment property but by mistake the 50 foot vacant lot was described in the deed.

On July 26, 1948, Darwin borrowed $20,-500 from appellant, evidenced by his promissory note due Feb. 15, 1949, which was secured by a chattel mortgage on certain livestock. He failed to meet this note at maturity and in the foreclosure suit appellant obtained a general order of attachment which was levied upon certain real estate Darwin owned in Catlettsburg, including the apartment property which was of record in his name. Mildred intervened and her pleadings set out the facts recited above. She tendered with her intervening petition a quit-claim deed to the 50 foot vacant lot and asked the chancellor to reform the deed Darwin executed to her so it would convey the apartment property as intended, and that appellant's general order of attachment

be discharged which was levied on the apartment.

Appellant insists that under KRS 382.270 the holder of an unrecorded deed takes subject to the attachment lien of a creditor without notice; that as it was a subsequent creditor without notice, Mildred's claim to the property, merely through possession and without a deed, must yield to the attachment lien. It places most of its reliance in Leslie v. First Huntington Nat. Bank, 301 Ky. 145, 191 S.W.2d 204, and First Nat. Bank v. Williamson, 273 Ky. 116, 115 S.W.2d 565. In the Williamson case the purpose of reforming the deed was to have it convey certain coal royalty which had been omitted by oversight from the original conveyance, and we said that such reformation could not interfere with the bank's prior equity obtained through its attachment, since the property stood in the debtor's name and there was no publicity of the conveyance of the royalty to put the bank on notice. In the Leslie case we held that the possession of the mother who lived on the property under her right of dower and held an unrecorded deed from her daughter, for the latter's undivided interest, did not give the bank notice the mother owned the daughter's interest, and the attachment the bank levied thereon was upheld.

It is urged by Mildred that the reformation of an instrument is retroactive and attaches to the property contemporaneously with its execution, as the reformed instrument is the one the parties intended to execute. Ordinarily this is true, but the reformation cannot prejudice the rights of innocent third parties. See the Williamson case, 273 Ky. 116, 115 S.W.2d 565. She further contends that an attaching creditor has no greater right in the property than the debtor had at the time of the attachment, and as Darwin claimed no interest in the property against her, his creditors may not. But in Meade v. Wells, 309 Ky. 748, 219 S.W.2d 972, we said to adopt this rule would emasculate our recording statutes. Our reasoning in a nutshell is that if an unrecorded deed will not protect the owner against the attachment of a subsequent creditor without notice, certainly mere possession of the property, with no deed at all, cannot protect the equitable owner, unless the possession was sufficient to put the attaching creditor on notice.

There can be no doubt that Mildred was in possession of this property since it is well established one is not required to live on property to be in possession thereof but it may be occupied through tenants. Greenway v. Watson, 268 Ky. 745, 105 S.W.2d 848; Norfolk & Western Ry. Co. v. McCoy, 250 Ky. 190, 61 S.W.2d 1080; Fugate v. Martin, 252 Ky. 189, 66 S.W.2d 40. Manifestly, tenants occupying an apartment house would not put appellant on notice that Mildred was the owner of the property to which she had no deed.

Mildred attempts to distinguish the Leslie case, 301 Ky. 145, 191 S.W.2d 204, from the instant one because there Mrs. Leslie's possession was not exclusive but was in conjunction with her daughter who held the record title. But on the question of notice to the attaching creditor through possession of one claiming to be the owner, the Leslie case is much stronger than the instant one where notice of the change of ownership must depend upon an apartment house being occupied by the tenants of the one claiming to own it. Customarily, an apartment house is occupied by tenants and their occupancy can furnish no notice of a change in the ownership thereof. She attempts to distinguish the Williamson case, 273 Ky. 116, 115 S.W.2d 565, from the one at bar on the ground that the former related to minerals and the ownership thereof could not be determined from the possession of the surface. However, the mines had been opened and were just as visible as any other improvements. See Williamson v. Williamson, 223 Ky. 587, 4 S.W.2d 392, for a statement of this fact. We are unable to see any distinction between the case at bar and the Williamson case, 273 Ky. 116, 115 S.W.2d 565.

Mildred puts her chief reliance in Gilbert v. Watts-Ritter & Co., 249 Ky. 27, 60 S.W.2d 142, and Powell's Trustee in Bankruptcy v. Powell, 232 Ky. 27, 22 S.W.2d 293. However, the facts in these cases distinguish them from the instant one. In

the first case, B. F. Gilbert, as administrator of his wife, had invested certain funds of their children in three lots in Evarts, title to which was taken in his name. To reimburse his children, he executed to them a title bond to these lots. This instrument was not recorded, but one of the children went into possession of the lots for himself and the other children. Subsequently, the father became indebted to Watts-Ritter & Co., who obtained judgment against him and had an execution levied on these lots. The judgment creditors made no showing as to the manner and character of·the father's possession, and we held that the entry into possession of the lots by the son before the debt of the father was incurred was sufficient to put the father's creditors on notice that the son was asserting title to the property. In the instant case the possession of the apartment house by Mildred through her tenants did not put appellant on notice that she owned the property because there was nothing to evidence a change in the possession of the apartment house from the time her husband owned it until she took possession as each held possession through their occupying tenants, as is customary. In the Gilbert case there was evidence of a change in possession which would put a creditor on notice, while here there was nothing to put the creditor on notice that there might have been a change in title.

In the Powell case, 232 Ky. 27, 22 S.W. 2d 293, a father, while in affluent circumstances and free from debt, conveyed to his son a valuable farm. The son shortly thereafter moved on the farm and took possession. Instead of recording the deed, the son gave it to his father with the request that he put it of record. The father inadvertently neglected to do so; later became involved financially; destroyed the deed and informed his son of that fact, telling him that the destruction of the deed defeated his title. The son relied upon his father's advice and acquiesced in his father listing the farm as part of his assets in bankruptcy. Subsequently, the son obtained the advice of a lawyer and asserted title to the farm. We held that the character of the son's possession was actual, open and

unequivocal and was sufficient to put all persons dealing with his father upon inquiry. Furthermore, it was said in the opinion the facts were not such as to influence any person in their business transactions with the father.

█ In the instant case, Darwin, in a credit statement given appellant on May 12, 1948, when the first loan of $10,000 was made to him, listed "city property $25,000"; and on July 26, 1948, at the time the loan was increased to $20,000, Darwin's credit statement showed "city property $42,000". At the time each of these loans was made, the title to this apartment house was recorded in the name of Darwin and it was occupied by tenants. If Mildred, personally, had been occupying this apartment when these loans were made, then under the Gilbert and Powell cases it might be said with reason that her possession was sufficient to put the creditor on notice. But where there was no change in the occupancy of the apartment building after the attempted conveyance of it to Mildred and her tenants remained in it under her possession the same as Darwin's did under his possession, there was no change of pre-existing conditions and circumstances which would cause Darwin's creditors to inquire whether Mildred or he owned the property. Therefore, the attachment lien took precedence over the reformed deed. 66 C.J.S., Notice, § 11c, p. 646; Leslie v. First Huntington Nat. Bank, 301 Ky. 145, 191 S.W.2d 204, at page 208.

In the Powell case, 232 Ky. 27, 22 S.W. 2d 293, it was said the facts were such as to in nowise influence any persons in their business dealings with the father. But it cannot be said the facts in the instant case were such as not to influence appellant in lending this money to Darwin. If Mildred had a deed to the property and it had been .recorded, or if she had been occupying the apartment personally, appellant would have been put on notice that the apartment was not included in the "city property" listed in Darwin's financial statement.

█ We realize this is a hard case for Mildred to lose and that she is the victim of mistake which she did not bring about.

However, there is some responsibility on a person accepting a deed to make sure it conveys the property intended and that the description is correct. A meticulous lawyer is sometimes derisively called a "mouse-tracker" by those who would like to be known as "elephant-hunters", but no one can lay claim to being a competent real estate lawyer, or even a conveyancer, who is not a "mouse-tracker". We even notice a mistake in the description of the quit-claim deed Mildred executed. Instead of calling for the east side of Broadway it calls for the west side of the street. This same error in the description appears in the deed Darwin executed to her for the vacant lot. A small mistake, but somebody was not accurate in comparing the description in either of those instruments.

The judgment is reversed with directions that one be entered in conformity with this opinion.